IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| THE MEDICAL PROTECTIVE COMPANY | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 5:24-cv-1315 |
| | § | |
| MRUGESHKUMAR SHAH | § | |
| | § | |
| Defendant | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT

TO THE HONORABLE JUDGE OF THIS COURT:

COMES NOW, Plaintiff The Medical Protective Company ("Plaintiff" or "MedPro"), and files this Original Complaint seeking a declaratory judgment regarding the rights, status, and other legal relations between MedPro and Defendant Mrugeshkumar Shah ("Defendant" or "Mr. Shah"). Med Pro respectfully shows the Court as follows.

### I.  BRIEF SUMMARY OF THE CASE

1.      This case involves a breach of contract claim and an insurance coverage dispute.

2.      MedPro issued professional liability Claims Made Policy No. 689065 ("the Policy") to Defendant.  The Policy was effective from July 1, 2018 to July 1, 2019.  An Extension Contract Endorsement provided an extended period to file claims covered by the Policy "for professional services rendered or which should have been rendered" between certain dates.  Coverage for claims filed pursuant to the Extension Contract Endorsement is limited to $250,000 per claim and $750,000 in the aggregate.  A certified copy of the Policy is attached as Exhibit A.

3.      Mr. Shah has been named as a defendant in a civil lawsuit ("the underlying lawsuit") filed by Julia Hubbard and Kayla Goedinghaus ("the underlying plaintiffs"). Specifically, the underlying lawsuit is Case No. 5:23-cv-00580-FB: *Julia Hubbard and Kayla Goedinghaus v. Mrugeshkumar Shah, et al.,* pending in the United States District Court for the Western District of Texas, San Antonio Division.  A true and correct copy of the underlying plaintiffs' current pleading in the underlying lawsuit (their second amended complaint) is attached as Exhibit B.

4.      In the underlying plaintiffs' current pleading, they allege that Mr. Shah violated the Trafficking Victims Protection Act and the Racketeering Influenced and Corrupt Organizations Act by participating in a "Venture" and then an "Enterprise" involved in (among other illegal activities) the sex trafficking of women.  The claims asserted, and the damages sought, against Mr. Shah in the underlying lawsuit are not covered by the Policy.

5.      MedPro respectfully requests that this Court enter a declaratory judgment that (a) Mr. Shah has breached the Policy, (b) the Policy is void, voidable, and/or subject to recission, (c) MedPro has no obligations under the Policy, (d) the Policy provides no coverage for the allegations against Mr. Shah in the underlying lawsuit, (e) the Policy provides no coverage for the damages sought from Mr. Shah in the underlying lawsuit,  (f) MedPro has no duty to defend Mr. Shah (or anyone else) in the underlying lawsuit, and/or (g) MedPro has no duty to indemnify Mr. Shah (or anyone else) for any settlement or judgment relating to the underlying lawsuit.

## II.  PARTIES

6.      MedPro is incorporated in Indiana and has its principal place of business in Indiana.  Therefore, it is a citizen and resident of Indiana.

-2-

7.      Mr. Shah is, on information and belief, a citizen and resident of Texas.  He can be served with process at (1) 809 Clack Drive, Garland, Texas 75044, (2) 10400 North Central Expressway, Suite A, Dallas, Texas 75231, or (3) wherever else he may be found.

### III.  JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). There is complete diversity of citizenship among the parties to this lawsuit, which is a civil action between citizens of different states in which the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs.

9.      This Court has personal jurisdiction over Defendant because, on information and belief, he is a citizen and resident of Texas.

10.     With respect to Defendant, the exercise of jurisdiction in Texas satisfies, and is consistent with, constitutional due process guarantees.  Defendant has sufficient minimum contacts with Texas and the exercise of jurisdiction in Texas comports with, and does not offend, traditional notions of fair play and substantial justice.  Texas courts may exercise both general jurisdiction and specific jurisdiction based on Defendant's contacts, contracts, activities, and affiliations with and within the State of Texas.

11.     Venue is proper in the Western District of Texas, San Antonio Division pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to MedPro's claims occurred in this judicial district.  For example, the underlying lawsuit is pending in this judicial district and division.

## IV.  RELEVANT CHRONOLOGY AND FACTUAL BACKGROUND

12.    On or about March 28, 2003, Defendant was licensed to practice medicine in the State of Texas.  Thus -- for a period of time -- Defendant was appropriately referred to as "Dr. Shah."

13.    However, on November 16, 2016, Defendant was indicted for conspiring to receive illegal health care bribes and kickbacks and receiving illegal remuneration for patient referrals to a now-closed medical facility in Dallas, Texas.  Exhibit C.  Defendant knew about his indictment on these felony charges no later than his arraignment, which occurred on December 1, 2016.  Exhibit D.

14.    The Policy (for an earlier policy year) included a Representation Endorsement in which Defendant "agree[d] to inform [MedPro] of any changes to his or her practice.  Such material changes shall include, but are not limited to … any criminal indictment…."  Ex. A, p. 17 of 44.

15.    Defendant breached the Policy because he did not inform MedPro of his criminal indictment during the July 1, 2016 - July 1, 2017 policy year.

16.    Defendant breached the Policy because he did not inform MedPro of his criminal indictment during the process of applying for coverage for the July 1, 2017 - July 1, 2018 policy year.

17.    Defendant breached the Policy because he did not inform MedPro of his criminal indictment during the July 1, 2017 - July 1, 2018 policy year.

18.    Defendant breached the Policy because he did not inform MedPro of his criminal indictment during the process of applying for coverage for the July 1, 2018 - July 1, 2019 policy year.

19.     Defendant breached the Policy because he did not timely inform MedPro of his criminal indictment during the July 1, 2018 - July 1, 2019 policy year.

20.     On April 9, 2019, a jury found Defendant guilty of all of the felony charges alleged against him.  Exhibit E.

21.     Defendant breached the Policy because he did not timely inform MedPro of his criminal convictions during the July 1, 2018 - July 1, 2019 policy year.

22.     On June 27, 2019, the Texas Medical Board suspended Defendant's license to practice medicine in the State of Texas because of his multiple felony convictions.  Exhibit F.

23.     The Policy's Representation Endorsement included "the revocation, suspension, or restriction of the Insured's professional license, hospital privileges, or DEA license" as another "material change" of which Defendant "agree[d] to inform" MedPro.  Ex. A, p. 17 of 44.

24.     Defendant breached the Policy because he did not timely inform MedPro of the suspension of his professional license during the July 1, 2018 - July 1, 2019 policy year.

25.     On March 18, 2021 (after delays resulting in part from the Covid-19 pandemic), the United States District Court for the Northern District of Texas, Dallas Division entered a "Forfeiture Money Judgment" against Defendant.  Exhibit G.

26.     On April 12, 2021, the Northern District of Texas, Dallas Division entered a judgment of conviction on all of the felony counts alleged against Defendant.  This judgment sentenced Defendant to confinement in the United States Bureau of Prisons for forty-two months.  Exhibit H.

27.     On June 3, 2021, the Texas Medical Board revoked Defendant's license to practice medicine in the State of Texas.  Exhibit I.

28.    Therefore, Defendant is now appropriately referred to as "Mr. Shah" rather than "Dr. Shah," and he has not been authorized to practice his (former) profession under the laws of the State of Texas since June 27, 2019.

29.    On March 21, 2024 -- while he was still serving time in federal prison for his felony bribery and kickback scheme -- Mr. Shah was named as a defendant in the underlying lawsuit.  The underlying lawsuit does not involve, and is not related to, the criminal conduct for which Mr. Shah was imprisoned for 42 months.  It does, however, involve unrelated, separate, and different criminal conduct allegedly committed by Mr. Shah, for which the underlying plaintiffs seek civil damages and penalties.  Exhibit B.

## V.  THE ALLEGATIONS AGAINST MR. SHAH IN THE UNDERLYING LAWSUIT

30.    The factual allegations against Mr. Shah (and others) in the underlying lawsuit are disturbing.  The underlying plaintiffs' current pleading is their "Second Amended Complaint for Violations of the Trafficking Victims Protection Act and Racketeering Influenced and Corrupt Organizations Act."  The only claims asserted against Mr. Shah in the underlying lawsuit are (1) that he violated human trafficking laws set out in the Trafficking Victims Protection Act ("the TVPA") and (2) that he violated the Racketeering Influenced and Corrupt Organizations Act ("RICO").

31.    The following paragraphs 32 - 44 are not intended to suggest or to imply that the allegations against Mr. Shah in the underlying lawsuit are true.  On the contrary, paragraphs 32 - 44 merely recount and/or reference the underlying plaintiffs' allegations.  Accordingly, paragraphs 32 - 44 should not be admitted or denied based on whether the statements in these paragraphs are actually true; instead, these paragraphs should be admitted or denied based on

whether the statements in these paragraphs accurately recount and/or reference the underlying plaintiffs' allegations in the underlying lawsuit.

32.     According to the underlying plaintiffs' current pleading, for nearly a decade or more, Richard Hubbard ("Hubbard") ran a sex and labor trafficking venture ("Venture") for his financial gain. Ex. B at ¶¶ 1-2. The victims were Hubbard's then-wife, underlying plaintiff Julia Hubbard ("Mrs. Hubbard"), whom Hubbard made into a virtual long-term sex slave, and his later fiancée, underlying plaintiff Kayla Goedinghaus ("Ms. Goedinghaus"), whom he also had those in the Venture beat and rape. Ex. B at ¶ 2. To develop and run this successful Venture, Hubbard utilized the essential services of a Texas billionaire, a prominent police officer, a psychologist, three medical doctors, and others. Ex. B at ¶ 2.

33.     Dozens of times, generally at "Forced Sex Parties" over the course of years, Hubbard forced the underlying plaintiffs to perform sex acts for payments (which he retained) and to secure business relationships. Ex. B at ¶ 3. Additional force and threats of force included beatings to the point of hospitalization -- twice Hubbard injured Mrs. Hubbard's neck, requiring spinal surgery -- and threats to harm the underlying plaintiffs' children, who were all under six years old at the time Hubbard threatened them, with the support of others in the Venture. Ex. B at ¶ 5.

34.     The misconduct and crimes of the underlying defendants were so egregious that the Venture became an illegal racketeering enterprise ("Enterprise") whereby the underlying defendants conspired together to commit various unlawful predicate acts in violation of RICO, including coercion, human trafficking, dealing in controlled substances, and wire fraud, all of which proximately harmed the underlying plaintiffs. Ex. B at ¶ 6.

35.     Key to Hubbard's control of the underlying plaintiffs, and the essential functioning of the Venture, was the work of psychologist Benjamin Todd Eller ("Eller"). Ex. B at ¶ 7. Eller

prepared false affidavits and other documents claiming that the underlying plaintiffs were seriously psychiatrically troubled persons under his care and thus required heavy doses of a variety of medications, including Adderall, Marinol, Lorazepam, Ambien, and Trazadone. Ex. B at ¶ 8.

36. Because Eller was not a medical doctor, he was unable to write the prescriptions for the medications essential to the Venture. Ex. B at ¶ 127. Therefore, starting in the Fall of 2010, Hubbard found medical doctors who were willing to write prescriptions based only on Eller's written recommendations in exchange for payments from Hubbard. Ex. B at ¶ 128. These physicians included underlying defendants Melissa Miller, Scott Woods and Mr. Shah (collectively, "Medical Doctor Defendants"). Ex. B at ¶ 129.

37. The Medical Doctor Defendants all knowingly provided essential support to the Venture, with knowledge or at least reckless disregard of its improper activities, in exchange for financial benefit. Ex. B at ¶ 130. Each of the Medical Doctor Defendants was informed by the underlying plaintiffs that the drugs they were prescribing were being used for an improper purpose, that the underlying plaintiffs were being abused by Hubbard, and that the underlying plaintiffs needed help. Ex. B at ¶ 131. Yet, none of the Medical Doctor Defendants took any action in response to these reports and instead simply prescribed the drugs that Eller and Hubbard had requested. Ex. B at ¶ 132.

38. Specifically, Mr. Shah was -- at that time -- a pain management doctor whom Mrs. Hubbard began seeing "in or about 2013." Ex. B at ¶ 133. Mr. Shah and his staff would issue prescriptions to her without questions. Ex. B at ¶ 133. Over the course of multiple visits in the Summer of 2014, Mrs. Hubbard told Mr. Shah that she did not need the drugs and that she was being forced to engage in sex against her will. Ex. B at ¶ 133. Mr. Shah ignored Mrs. Hubbard's

pleas for help, visible bruising, frequent injuries, and surgeries that indicated physical abuse. Ex. B at ¶ 15.

39.    Mrs. Hubbard eventually escaped the Venture in November of 2018. Ms. Goedinghaus meanwhile escaped from the Venture in January of 2020.

40.    The TVPA prohibits various forms of human trafficking, including involuntary servitude, forced labor, and sex trafficking. 18 U.S.C. §§ 1581-92. An individual who is a trafficking victim may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys' fees. 18 U.S.C. § 1595(a).

41.    The underlying plaintiffs' current pleading reasserts human trafficking allegations against all of the underlying defendants.  The underlying plaintiffs state that they seek damages pursuant to the Court's "subject matter jurisdiction under 18 U.S.C. § 1595" and "[a]ttorneys' fees pursuant to the civil remedy for human trafficking in 18 U.S.C. § 1595(a)." Ex. B at ¶ 54 and p. 70 *(g).

42.    The underlying plaintiffs allege that Mr. "Shah is liable to both [underlying p]laintiffs under TVPA beneficiary liability because he benefitted, financially or by receiving anything of value, by participating in the Venture." Ex. B at ¶ 337.  The underlying plaintiffs assert that Mr. "Shah provided assistance, support and facilitation to the Venture, including by prescribing controlled substances to [Mrs.] Hubbard that allowed the Venture to force her to perform commercial sex acts against her will." Ex. B at ¶ 338. Further, the underlying plaintiffs maintain that Mr. "Shah received things of value from the Venture, including payment from

[Hubbard] on behalf of the Venture for [Mrs.] Hubbard's visits to [Mr.] Shah." Ex. B at ¶ 339. The underlying plaintiffs contend that Mr. "Shah knew or should have known of the trafficking acts, including [and] because, in summer 2014, [Mrs.] Hubbard informed him that [Hubbard] and the Venture were, through the use of the drugs that [Mr.] Shah prescribed, forcing [Mrs.] Hubbard to engage in commercial sex against her will." Ex. B at ¶ 340. The underlying plaintiffs allege "these acts also constitute labor trafficking under the TVPA, as [Mr.] Shah participated in and benefitted from the Venture, which also obtained forced labor from [Mrs.] Hubbard and [Ms.] Goedinghaus." Ex. B at ¶ 341.

43.     The underlying plaintiffs also reassert their RICO allegations. They allege the Enterprise, which consisted of all of the underlying defendants, committed a number of predicate acts that proximately harmed the underlying plaintiffs. Ex. B at ¶ 387. These predicate acts allegedly include human trafficking in violation of the TVPA, violations of the Controlled Substances Act, wire fraud and witness tampering. Ex. B at ¶ 388. The underlying plaintiffs additionally contend that these predicate acts proximately harmed them because these acts were essential to the Venture and Enterprise and resulted in the underlying plaintiffs suffering financial harm, including the loss of earnings. Ex. B at ¶ 389. "These damages include, but are not limited to, moneys that [Mrs.] Hubbard and [Ms.] Goedinghaus earned for providing companionship, including at Forced Sex Parties, and monies that [Mrs.] Hubbard earned [for] work at Silver City Cabaret." Ex. B at ¶ 390.

44.     The underlying plaintiffs' current pleading asserts four causes of action (quoted below using the party names as they appear in the underlying lawsuit, and combining the allegations into single paragraphs):

Count One: Violation of Human Trafficking Laws, 18 U.S.C. § 1591(a) (Sex Trafficking) Against All Defendants…. Defendants knowingly affected interstate commerce by recruiting, enticing, harboring, transporting, obtaining, maintaining, and/or soliciting Plaintiffs and others by any means knowing—or in reckless disregard of the fact—that Defendant Hubbard and other members of the Venture would use means of force, threats of force, fraud, and coercion to cause Plaintiffs and others to engage in commercial sex acts. Further, all Defendants benefitted, financially or by receiving something of value, from participating in a venture which has engaged in recruiting, enticing, harboring, transporting, obtaining, maintaining, and/or soliciting Plaintiffs and others by any means knowing—or in reckless disregard of the fact—that Defendant Hubbard and others in the Venture would use means of force, threats of force, fraud, and coercion to cause Plaintiffs and others to engage in commercial sex acts. As a direct result of Defendants' violations of 18 U.S.C. § 1591(a), Plaintiffs each suffered serious injury and damages in an amount to be determined at trial.

Count Two: Violation of Human Trafficking Laws, 18 U.S.C. § 1589 (Labor Trafficking) Against All Defendants…. Defendants knowingly provided or obtained the labor or services of Plaintiffs by (a) means of force, threats of force, physical restraint, or threats of physical restraint; (b) means of serious harm or threats of serious harm to that person or another person; (c) means of the abuse or threatened abuse of law or legal process; or (d) means of any scheme, plan, or pattern intended to cause Plaintiffs to believe that, if Plaintiffs did not perform such labor or services, Plaintiffs or another person, including Plaintiffs' children, would suffer serious harm or physical restraint. Further, all Defendants benefitted, financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by prohibited means, knowing or in reckless disregard of the fact that the Venture had engaged in the providing or obtaining of labor or services by such prohibited means. As a direct result of Defendants' violations of 18 U.S.C. § 1589, Plaintiffs each suffered serious injury and damages in an amount to be determined at trial.

Count Three: Violation of Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962)(c) (Pattern of Racketeering) Against All Defendants…. All Defendants have acted in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c) to the detriment of Plaintiffs. At all times relevant to these allegations, all Plaintiffs and all Defendants were "person[s]" within the meaning of 18 U.S.C. § 1961(3). Defendants came together to form an association in fact Enterprise. At all times relevant to the above allegations, the Enterprise had a legitimate non-criminal purpose, specifically facilitation of entertainment, companionship, and networking at social functions. However, this legitimate purpose was subverted by the Enterprise's illegal acts and violations of federal laws. In the case of each Plaintiff, the Enterprise relied on the work of Eller and other members of the Enterprise in Texas, affecting interstate commerce. Defendants engaged in activities which constitute "racketeering activity," including violation of the Trafficking Victims Protection Act (18 U.S.C. §§ 1591, 1589), violation of the Controlled Substances Act (21 U.S.C. § 801, et seq.),

wire fraud (18 U.S.C. § 1343), and witness tampering (18 U.S.C. § 1512), within the meaning of 18 U.S.C. § 1961(1). Defendants engaged in multiple predicate acts amounting to a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5). Plaintiffs were damaged by Defendants' violation of 18 U.S.C. § 1962(c) in an amount to be determined at trial.

Count Four: Violation of Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c) (Rico Conspiracy) Against All Defendants…. All Defendants have acted in violation of the Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. § 1962(d) to the detriment of Plaintiffs. At all times relevant to these allegations, Plaintiffs and all Defendants were "person[s]" within the meaning of 18 U.S.C. § 1961(3). All Defendants conspired to violate the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c) by associating in fact to create an Enterprise which then engaged in a pattern of racketeering activity resulting in injury to Plaintiffs. The period of the conspiracy began as early as August 2012, and continued at least until September 2019, and likely is continuing today. The object of the conspiracy was to traffic women for purposes of sexual acts and forced labor, to the financial benefit of Defendant Rick Hubbard, Defendant Eller, and the Medical Doctor Defendants and for the sexual gratification and other benefits of all Defendants. Each predicate act committed by the Enterprise was in furtherance of the conspiracy. The predicate acts caused physical and emotional injury to Plaintiffs, in an amount to be determined at trial.

Ex. B at pp. 66 - 69 of 71.

## VI. RELEVANT POLICY PROVISIONS

45. The insuring agreement of the Policy states as follows:

In consideration of the payment of the premium and subject to the limits of liability and the other terms of this policy, the Company hereby agrees to defend and pay damages, in the name and on behalf of the Insured or his or her estate,

A. In any claim first made, or potential claim first brought to the Insured's attention, during the term of this policy based upon professional services rendered, or which should have been rendered, after the retroactive date by the Insured, or any other person for whose acts or omissions the Insured is legally responsible, in the practice of the Insured's profession as hereinafter limited and defined.

However, the Company shall have no duty to defend or pay damages:

1.      on a claim unless it was reported to the Company during the term of this policy or thirty (30) days thereafter.  Ex. A, p. 18 of 44.

\* \* \*

The following definitions shall apply throughout the policy:

1.      The word "claim" shall mean an express written demand for money as compensation for civil damages. Ex. A, p. 19 of 44.

\* \* \*

5.      The phrase "professional services" shall only include the following:

(a) the rendering of medical, surgical, dental, or nursing services to a patient and the provision of medical examinations, opinions, or consultations regarding a person's medical condition within the Insured's practice as a licensed health care provider…. Ex. A, p. 19 of 44.

\* \* \*

**EXCEPT THIS POLICY DOES NOT COVER**  Ex. A, p. 4 of 44.

\* \* \*

4      any liability of any … association … of which the Insured has any financial interest;

5      any liability covered under a[n] … automobile, fire or general liability policy;

6      any punitive damages or damages over and above actual compensatory damages, which may be assessed against the Insured…. Ex. A, p. 4 of 44.

\* \* \*

Upon the following conditions:  Ex. A, p. 5 of 44.

\* \* \*

-13-

3        The Insured shall be authorized to practice its profession under the laws of the State or States in which it operates.  Ex. A, p. 5 of 44.

* * *

The Policy limits and defines the Insured's profession as "PHYSICIANS NOC". Ex. A, p. 6 of 44.

* * *

***REPRESENTATION ENDORSEMENT*** [Endorsement 825]

…Therefore, it is understood and agreed that, to the extent permitted by law, the Company reserves the right to rescind this policy, or any coverage provided herein, for any material misrepresentation made by the Insured. …[T]he Insured agrees to inform the Company of any changes to his or her practice.  Such material changes shall include, but are not limited to: Ex. A, p. 17 of 44.

* * *

e.       the revocation, suspension, or restriction of the Insured's professional license, hospital privileges, or DEA license;
f.       any criminal indictment….  Ex. A, p. 17 of 44.

* * *

***AMENDMENT   TO   BUSINESS   ENTERPRISE   EXCLUSION*** [Endorsement 831]

The following exclusion is hereby added:

any liability arising from activity of an Insured, or an employee of the Insured, as a proprietor, shareholder, officer, administrator, committee member, director, or medical director of any hospital, sanitarium, clinic, nursing home, surgicenter, blood bank, commercial laboratory, health maintenance organization, preferred provider organization, or other professional or business enterprise, unless the liability arises from the Insured's provision of treatment to a patient.  Ex. A, p. 21 of 44.

* * *

*EXTENSION CONTRACT ENDORSEMENT* [Endorsement 780]

*… it is hereby understood and agreed that the period for the filing of a claim in accordance with Section A of this policy is extended but only for the filing of those claims covered by the policy to which this endorsement is attached for professional services rendered or which should have been rendered on or after the policy retroactive date of 07/01/2003 and prior to the policy expiration date 07/01/2019. The limits of coverage which shall apply to claims reported under this endorsement are $250,000 per claim filed and $750,000 as an aggregate amount for all claims reported under this endorsement….* Ex. A, p. 43 of 44.

## VII.  MEDPRO'S REQUEST FOR AND ENTITLEMENT TO DECLARATORY RELIEF

46.     MedPro files this declaratory judgment action pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code, the Texas "Uniform Declaratory Judgments Act."

47.     Texas Civil Practice and Remedies Code § 37.003(a) states that this Court "has power to declare rights, status, and other legal relations whether or not further relief is or could be claimed."

48.     Texas Civil Practice and Remedies Code § 37.004(a) states that "A person interested under a … written contract … or whose rights, status, or other legal relations are affected by a … contract … may have determined any question of construction or validity arising under the … contract … and obtain a declaration of rights, status, or other legal relations thereunder."

49.     Texas Civil Practice and Remedies Code § 37.009 states that "In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just."

50.     The Policy is a claims made policy.

51.     Mr. Shah has breached the terms of the Policy.

52.     MedPro is discharged from any obligations under the Policy.

-15-

53.    The Policy is subject to recission.

54.    The Policy is void and/or voidable, and MedPro is entitled to rescind the Policy, pursuant to the fortuity doctrine and/or the principle of known loss and/or the principle of loss in progress.

55.    The claims asserted against Mr. Shah in the underlying lawsuit are not within the Policy's scope of coverage.

56.    Assuming otherwise, the plain language of the Policy excludes coverage for the claims asserted against Mr. Shah in the underlying lawsuit.

57.    No exception applies that could bring any claim asserted against Mr. Shah back within the scope of coverage.

58.    The damages sought from Mr. Shah in the underlying lawsuit are not within the Policy's scope of coverage.

59.    Assuming otherwise, the plain language of the Policy excludes coverage for the damages sought from Mr. Shah in the underlying lawsuit.

60.    No exception applies that could bring any element of damage sought from Mr. Shah back within the scope of coverage.

61.    The underlying lawsuit does not allege or involve "professional services" as defined in the Policy.

62.    The underlying lawsuit does not allege or involve services rendered, or which should have been rendered, "in the practice of [Mr. Shah's] profession" as limited and defined in the Policy.

63.    MedPro has no duty to defend Mr. Shah (or anyone else) in the underlying lawsuit.

64. The same reasons that negate the duty to defend likewise negate any possibility that MedPro will ever have a duty to indemnify Mr. Shah (or anyone else) for any settlement or judgment relating to the underlying lawsuit.

65. Even if MedPro had a duty to defend Mr. Shah (or anyone else) in the underlying lawsuit, MedPro would never have a duty to indemnify Mr. Shah (or anyone else) for any settlement or judgment relating to the underlying lawsuit.

66. MedPro respectfully requests that this Court enter a declaratory judgment regarding the rights, status, and other legal relations of the parties to the Policy.  Specifically, MedPro respectfully requests that this Court enter a declaratory judgment that (a) Mr. Shah has breached the Policy, (b) the Policy is void, voidable, and/or subject to recission, (c) MedPro has no obligations under the Policy, (d) the Policy provides no coverage for the allegations against Mr. Shah in the underlying lawsuit, (e) the Policy provides no coverage for the damages sought from Mr. Shah in the underlying lawsuit,  (f) MedPro has no duty to defend Mr. Shah (or anyone else) in the underlying lawsuit, and/or (g) MedPro has no duty to indemnify Mr. Shah (or anyone else) for any settlement or judgment relating to the underlying lawsuit.

67. MedPro further respectfully requests that this Court enter judgment awarding MedPro its costs and reasonable and necessary attorney's fees.

WHEREFORE, PREMISES CONSIDERED, MedPro respectfully requests that Defendant be summoned to appear and to answer, and that this Court enter judgment as set out above. MedPro also respectfully requests any other relief to which it may be entitled.

Respectfully submitted,

THE LITTLE LAW FIRM, P.C.


    /s/ Joseph R. Little
Joseph R. Little
State Bar No. 00784483
440 Louisiana Street, Suite 900
Houston, Texas 77002
(713) 222-1368 - Telephone
(281) 200-0115 - Facsimile
jrl@littlelawtexas.com

Attorney in Charge for Plaintiff The Medical
Protective Company

-18-