

**Medical Protective**
*a Berkshire Hathaway company*
Strength. Defense. Solutions. Since 1899.

November 13, 2024

This letter certifies that the policy attached is an exact copy of the contract of insurance for policy number 689065 issued by The Medical Protective Company to MRUGESHKUMAR KANAIYALAL SHAH, MD from 07/01/2018 to 07/01/2019 with limits and coverage as described therein.

Sincerely,

Mark T. Walthour
Senior Vice President of Underwriting
The Medical Protective Company

5814 Reed Road Fort Wayne, IN 46835 | 800-4MedPro | www.medpro.com

Physicians & Surgeons | Dentists | Chiropractors | Optometrists | Podiatrists | Hospitals
Healthcare Facilities | Healthcare Professionals | Excess and Surplus Lines | Alternative Risk



**Medical Protective**
*a Berkshire Hathaway company*
Strength. Defense. Solutions. Since 1899.

Policy Number: 689065

Dear Customer:

We are honored that you have chosen Medical Protective to protect your reputation and assets. We pledge to provide you peace of mind, expertise and choice.

- **Peace of mind**: We want you to do what you do best – provide excellent patient care. Rest assured, with MedPro's century-long history and industry-leading A++ financial rating from A.M. Best, you can focus on providing excellent patient care – free from worry about your professional liability risk.

- **Expertise**: It matters in your field, and also in ours. MedPro has defended over 400,000 claims, is advised by 140 doctors on our Specialty Advisory Boards in the areas of claims, underwriting and patient safety, and has a risk management team that has provided expert guidance and protection since 1913. All that expertise now supports you.

- **Choice**: You should be able to choose a policy that will meet your every need. MedPro offers the strongest, broadest coverage options, for not only individual healthcare providers but also the most complex healthcare systems, giving you the control to do what is best for you.

Whatever your needs, MedPro will provide you with solutions that will last throughout your career. Enclosed you will find your Medical Protective policy. Should you have any questions regarding your coverage, please contact our Customer Service Team at 800-4MEDPRO (800-463-3776) or your independent agent. We look forward to serving you now and in the years ahead.

Sincerely,

The Medical Protective Customer Service Team

MEDPLUS                    @  713-995-1842

# Medical Protective.
# Here To Protect You.

Please take a moment to glance through the tips below. Call us at 800-4MEDPRO (800-463-3776) for loss control services and risk management resources. For additional tools and information go to medpro.com/risk-management-offerings.

## Risk Management Tips

1. Create a culture of safety, supported by respectful communication with patients and their families and among all providers, consultants and staff.

2. Establish a comprehensive test result and referral tracking system to monitor for accurate and timely follow up.

3. Implement a policy for disclosing adverse events. Include the policy as part of staff orientation and ongoing education.

4. Develop written policies and procedures that address refunds and payment waivers. Ensure that these policies and procedures are specific to all payers and consistent with state and federal laws.

5. Use educational materials that are consistent with each patient's comprehension ability, and document all patient education in the medical record (thus supporting a comprehensive informed consent process).

6. Be aware of potential patient safety and liability risks associated with new technologies, and train staff appropriately.

## Claims Tips

1. Immediately contact Medical Protective to report any claim, threatened claim or adverse event you feel might later become a claim.

2. Refrain from discussing, with anyone, the events surrounding a claim or potential claim until you have consulted your Medical Protective claims professional.

3. Avoid admitting responsibility for any injury or making promises regarding liability, without first consulting your Medical Protective claims professional.

4. Should you receive notice of a claim or lawsuit, or believe a claim or suit might later be made, never alter, amend or add to your treatment records in any way.



**Medical Protective**
a Berkshire Hathaway company
Strength. Defense. Solutions. Since 1899.

# THE MEDICAL PROTECTIVE COMPANY OF FORT WAYNE INDIANA

(A STOCK INSURANCE COMPANY HEREIN CALLED THE COMPANY)

## CLAIMS MADE POLICY

**In Consideration** of the payment of the premium, receipt of which is hereby acknowledged, and subject to the limits of liability and the other terms of this policy, the Company hereby agrees to DEFEND and PAY DAMAGES, in the name and on behalf of the Insured or his estate,

A   IN ANY CLAIM FOR DAMAGES, FILED DURING THE TERM OF THIS POLICY, BASED ON PROFESSIONAL SERVICES RENDERED OR WHICH SHOULD HAVE BEEN RENDERED AFTER THE RETROACTIVE DATE, BY THE INSURED OR ANY OTHER PERSON FOR WHOSE ACTS OR OMISSIONS THE INSURED IS LEGALLY RESPONSIBLE, IN THE PRACTICE OF THE INSURED'S PROFESSION AS HEREINAFTER LIMITED AND DEFINED.

IF REPORTED TO THE COMPANY, THE FOLLOWING SHALL BE DEEMED TO BE A CLAIM FILED DURING THE TERM OF THIS POLICY:

   a) the receipt, by the Insured, of a notice of legal action for damages as described above, or

   b) the receipt, by the Insured, of a notification of an intention to hold the Insured responsible for damages as described above.

THE RETROACTIVE DATE SHALL BE EITHER:

   a) the date upon which this Insured's current, continuous coverage first became effective with this Company on a claims made basis, or

   b) any date prior to "a" above, mutually agreed upon by the Company and the Insured and for which the proper premium has been paid.

EXCEPT THIS POLICY DOES NOT COVER

   1   any liability growing out of the ownership, operation or supervision by the Insured or an employee of the Insured of (a) any hospital, sanitarium, clinic with bed and board facilities or (b) any business enterprise, whether or not related to patient care and / or treatment;

   2   payment of damages (BUT WILL DEFEND) in any claim for damages if said damages are in consequence of the performance of a criminal act or willful tort or sexual act;

   3   any vicarious liability of the Insured arising out of membership or participation in a partnership;

   4   any liability of any corporation or association of which the Insured is an owner or shareholder or of which the Insured has any financial interest;

   5   any liability covered under a workmen's compensation, automobile, fire or general liability policy;

   6   any punitive damages or damages over and above actual compensatory damages, which may be assessed against the Insured;

   7   any liability for a claim made against the Insured, based upon professional services rendered or which should have been rendered prior to the Retroactive Date shown in this policy;

   8   any liability for damages if claim for such damages was first brought to the Insured's attention prior to the date the Insured's current and continuous coverage first became effective.

B   Upon receipt of notice the Company shall immediately assume its responsibility for the defense of any such claim. Such defense shall be maintained until final judgment in favor of the Insured shall have been obtained or until all remedies by appeal, writ of error or other legal proceedings deemed reasonable and appropriate by the Company shall have been exhausted at the Company's cost and without limit as to the amount expended. However, the Company shall not be obligated to defend any claim after the applicable limit of the Company's liability has been exhausted by payment of judgments or settlements.

C   The Company shall furnish a bond, not to exceed the stated amount per claim filed required to appeal a judgment hereunder, but shall not be liable for more than a pro rata share of interest payments on appealed judgments.

D   The Company shall not compromise any claim hereunder without the consent of the Insured.

PAGE ONE

*E  Except as respects the cost of defense provided under paragraph B and the premium on any bond furnished under paragraph C, the Company's liability is limited as follows: Regardless of the number of (a) insureds or interests named in this contract or any endorsement or (b) persons or organizations who sustain damages or (c) claims made or suits brought on account of such injury or damage, or (d) the imposition of prejudgment interest on any final adjudication against the insured, the Company's total liability for damages including prejudgment interest shall not exceed the stated amount per claim filed for any one incidence and, subject to the same limit per claim filed for each incidence, the Company's total liability during any one policy year shall not exceed the stated annual aggregate.*

*Furthermore, for the purpose of determining the Company's liability, the following shall be considered as arising from one incident:*

*a)  all injury resulting from a series of acts or omissions in rendering professional services to one person and*

*b)  all injury arising out of continuous or repeated exposure to substantially the same general conditions.*

*F  In the event of either nonrenewal or cancellation of this contract by either party, (except as described in G or H below), the Company guarantees to offer, subject to its then current rules, rates, forms and procedures, and through its normal billing and premium collection procedures, an "extension contract." This contract shall extend the time that claims, which would otherwise be covered, may be filed and reported to the Company. This extension shall be valid throughout the Insured's lifetime and thereafter until the Insured's estate is closed. The Insured may accept the Company's offer of this "extension contract" by payment of the proper premium within 30 days of such billing. Lack of payment within the specified 30 day period will be deemed a rejection of such offer.*

*G  If after being continuously insured for a minimum of 5 years, should the Insured die or become totally disabled as a result of accident or sickness, the Company further agrees to waive any premium that would be normally due for the "extension contract" guaranteed to be offered in Insuring Agreement "F".*

*The term "totally disabled" shall mean that the Insured is permanently, wholly and continuously disabled and prevented from performing any and every duty pertaining to his profession and is under the regular care and attendance of a legally qualified physician other than himself.*

*H  If, at any time after reaching age 65, and having been continuously insured by the Company on a claims-made basis for the previous 10 years, the Insured elects to retire from his profession, the Company will offer the "extension contract" described above, and will waive any and all premium charges normally associated with such "extension."*

*I  After being continuously insured by the Company on a claims-made basis for 20 years, the Insured will be eligible to receive, at no premium charge, an "extension contract" for his past 20 years of claims-made coverage.*

*J  In any event, the limits of coverage offered in G, H and I above may not exceed the lowest limits purchased by the Insured during the five policy years immediately preceding disability or retirement.*

*Upon the following conditions:*

*1  The Insured shall notify the Company, at its General Offices, Fort Wayne, Indiana, or its agent, as soon as possible, of any threatened claim, with full information relative to the services rendered; and in event such claim is filed in court shall immediately forward any and all summons or process served together with the original or a copy of any and all other papers relating to said claim.*

*2  The Insured shall not (a) make any hold harmless agreements or contract any expense nor voluntarily assume any liability in any situation nor (b) make or contract any settlement of a claim hereunder, except at his own cost and responsibility, without the written authorization of the Company. The Insured shall at all times fully cooperate with the Company in any claim hereunder and shall attend and assist in the preparation and trial of any such claim.*

*3  The Insured shall be authorized to practice its profession under the laws of the State or States in which it operates.*

*4  Other insurance—The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the Insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the Company's liability under this policy shall not be reduced by the existence of such other insurance.*

*When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the Company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.*

*5  No action shall be maintained against the Company to recover a loss covered by this policy unless brought after the amount of such loss shall have been fixed either by a final judgment against the Insured by the court of last resort after trial of the issue or by agreement between the parties with the written consent of the Company and unless brought within two years and one day after such judgment or written agreement, except that, if such period is in conflict with the statutes of the state wherein this policy is issued, it is hereby amended to conform with such statutes. Any person or his legal representative who has secured such judgment or written agreement shall thereafter be entitled to recover under the terms of this policy in the same manner and to the same extent as the Insured. Nothing contained in this policy shall give any person or organization any right to join the Company as a codefendant in any action against the Insured to determine the Insured's liability. Bankruptcy or insolvency of the Insured shall not relieve the Company of any of its obligations hereunder.*

*6  The interest of the Insured under this policy shall not be assignable to any other person.*

PAGE THREE

*7 This policy may be cancelled by the Insured by mailing to the Company or any of its authorized representatives, written notice, stating when thereafter the cancellation shall be effective. This policy may be cancelled by the Company by mailing, postage prepaid, to the Insured at the last address on record with the Company written notice stating when, not less than 30 days thereafter, such cancellation shall be effective. If the Insured cancels, earned premium shall be computed in accordance with the standard short rate tables and procedure. If the Company cancels, earned premium shall be computed pro rata. Premium adjustments shall be made within a reasonable period of time after cancellation, but payment of or tender of such unearned premium shall not be a condition of cancellation.*

*8 By acceptance of this policy the Insured agrees that this policy embodies all agreements existing between himself and the Company or any of its agents relating to this insurance.*

*9 The following space is intended for waivers, exceptions and endorsements. If any, they shall become part of this policy.*

89  128  271  294  428  429  443  628  773  793  809  825  828  831  996
1021  1072  1073  1080  7500  7600

| | |
|---|---|
| **Retroactive Date:** 07/01/2003 | **Insured's Profession:** PHYSICIANS  NOC |
| **Policy No.** 689065 | **The Insured:** |
| **The Premium** $ | MRUGESHKUMAR KANAIYALAL SHAH  MD |
| TOTAL | 3060 COMMUNICATIONS PKWY STE 104 |
| | PLANO TX  75093-1625 |

**Per Claim Filed** $  1,000,000        **Annual Aggregate** $  3,000,000

The term of this policy shall begin and end at 12:01 a.m., standard time, at the place where the Insured resides

| | MO. | DAY | YEAR | | MO. | DAY | YEAR |
|---|---|---|---|---|---|---|---|
| and be from | 07 | 01 | 2018 | *to* | 07 | 01 | 2019 |

**In Witness Whereof,** *The Medical Protective Company has caused this policy to be signed by its President and its Secretary and countersigned by its duly authorized representative.*

PRESIDENT

SECRETARY

STEVEN M. SIMMONS AGENT FOR MPSA TEXAS PURCHASING GROUP, INC

COUNTERSIGNED
CMI-10-86

In the Event of Claim, Threatened or Filed,
IMMEDIATELY NOTIFY THE MEDICAL PROTECTIVE COMPANY, FORT WAYNE, INDIANA

*FOR SERVICE CALL:*        MEDPLUS        @  713-995-1842

PROFESSIONAL LIABILITY POLICY
*Continuous service to the profession since 1899*

RN

**THE**
**MEDICAL PROTECTIVE COMPANY**
**FORT WAYNE INDIANA**

## *ANTI-TRUST EXCLUSION*

*It is hereby understood and agreed that Paragraph A, is amended to include the following exclusions:*

**Any liability or claim arising out of actual or alleged involvement in anyway:**

> 1) *Anti-trust law violation; or*
> 2) *Agreement or conspiracy to restrain trade.*

**"Anti-trust law" means those laws listed in:**

> A) *Title 15, Section 12, of the United States Code;*
> B) *The Federal Trade Commission Act; or*
> C) *Any similar state law.*

*89*                                                                                     Edt. 5/24/94

✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳

### HOLD HARMLESS PROVISION

Condition 2 of the policy is hereby deleted and replaced by the following:

> The Insured shall not contract any expense nor make or contract any settlement of a claim hereunder, except at the Insureds own cost and responsibility, without the written authorization of the Company. The Insured shall at all times fully cooperate with the Company in any claim hereunder and shall attend and assist in the preparation and trial of any such claim.

The following exclusion is added to the policy:

> any liability for the acts of another assumed by the Insured under any contract or agreement, whether written or oral, which shall include any hold harmless or indemnification agreement entered into by the Insured, provided that this exclusion shall not serve to exclude coverage to any third party for any liability imposed upon such third party solely as the result of professional health care services rendered by or which should have been rendered by the Insured.

**128**                                                                                 **Edt. 8/97**

✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳✳

THE
**MEDICAL PROTECTIVE COMPANY**
FORT WAYNE, INDIANA

## CONDITION OF DUTIES UPON PAYMENT OF PREMIUM

The following condition is added:

> The Company's duty to perform under this policy is strictly conditioned upon the payment of the premium when due. As a result, the Insured's failure to make any payment toward the premium, either at the inception of the coverage or any subsequent renewal, shall be deemed to be a rejection of the Company's offer of coverage.
>
> However, if payment is made by check, electronic transfer or money order, it shall not be considered to have been submitted until honored by the payor's bank. (Coverage shall not be affected as a result of any negligent failure, on the part of the payor's bank, to honor the payment.)
>
> If payment is received after the first day of the policy period, but on or before its due date, the Insured's coverage shall still remain in effect from the first day of the policy period.

**271**                                                                      **Edt.  9/02**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## LOCUM TENENS EXCLUSION ENDORSEMENT

The following exclusion is added:

*any liability for a claim arising from professional services rendered, or which should have been rendered, to a patient being treated by the Insured as a result of an assignment or placement made by a "locum tenens agency" without prior written acknowledgment from the Company.*

*(As used in this exclusion, a "locum tenens agency" refers to an entity which provides temporary health care staffing to hospitals, clinics, and other facilities through the use of employed or contracted health care providers.)*

**294**                                                                      **Edt.  1/04**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

THE
MEDICAL PROTECTIVE COMPANY
FORT WAYNE INDIANA

## TEXAS AMENDATORY ENDORSEMENT

Condition 7 of the policy is amended to include the following:

The Company may not cancel or refuse to renew this policy based solely on the fact that the Insured is an elected official.

**428**                                                                                                          **Edt. 9/98**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

THE
**MEDICAL PROTECTIVE COMPANY**
FORT WAYNE, INDIANA

## MEDICARE/MEDICAID BILLING ACTIONS
## LIMITED DEFENSE COVERAGE

It is hereby understood and agreed the Company's obligation to defend the Insured under the terms of the policy is broadened to include the defense of an Insured in an investigation, civil suit and/or administrative proceeding which is brought by a state or federal agency which alleges improper submission of claims for reimbursement under the Medicare or Medicaid program. However, the investigation, civil suit and/or administrative proceeding must arise from bills or requests for reimbursement for professional services rendered or which should have been rendered by the Insured or any other person for whose acts or omissions the Insured is legally responsible.

It is further agreed and understood this offer of a defense is provided under the following terms and conditions:

1.  The Insured must first receive written notice of the investigation, suit and/or administrative proceeding during the term of this policy. The Insured must also report such notice to the Company, in writing, during the term of this policy.

2.  The Company's offer of a defense shall not create any duty to pay any damages, fines, civil penalties or other remedies assessed against the Insured as a result of the investigation, suit and/or administrative proceeding unless such damages are otherwise payable under the policy.

3.  The Company has no duty to defend the Insured against any criminal proceeding, including any indictment or criminal information, which charges an Insured with the violation of any state or federal penal statute.

4.  The Company has no duty to defend the Insured from any allegations the Insured engaged in bribery or illegal threats to prevent the disclosure of the Insured's improper activities or attempts to entice another to conspire with the Insured to engage in such improper activities.

5.  The Company will not pay more than $25,000 in defense costs for any single "incident" covered by this endorsement. In addition, the Company will not pay more than $100,000 in defense costs for all "incidents" which are reported to the Company during the term of this policy.

6.  All related allegations of improper billing practices included in the same, similar or subsequent investigation, civil suit and/or administrative proceeding shall constitute a single "incident."

7.  The Company shall have no duty to pay defense costs incurred by or for an attorney who was not retained or previously approved by the Company to defend the Insured.

429, Page 1 of 2                                                                 Edt. 11/99

THE
MEDICAL PROTECTIVE COMPANY
Fort Wayne, Indiana

8.  As used in this endorsement, "defense costs" include reasonable attorney fees as well as other reasonable costs incurred by or at the direction of the attorney in the investigation and defense of the matter.

9.  The Company has no duty to continue to pay defense costs after it becomes reasonably apparent to the Company that the Insured has engaged in fraudulent acts.

10. The Insured must immediately cease any improper practices as soon as they are discovered and agree to provide a refund to the third-party payor upon discovery of overpayment.

11. The Insured must have had a Medicare/Medicaid billing compliance program in place at the time the notice was first received by the Insured.

12. If the policy to which this endorsement is attached is canceled, nonrenewed or terminated for any reason, any claim covered under this endorsement which is first received by the Insured and reported to the Company within twelve months of the expiration of the policy shall be deemed to have been made during the term of this policy.  In no event shall this twelve month extension apply to any claim which occurs after the expiration of the policy or to claims that are covered under any subsequent insurance purchased by the Insured or that would be covered but for the exhaustion of such insurance applicable to such claims.

The remaining terms and conditions of the policy remain unchanged.

**429, Page 2 of 2**                                                                 **Edt. 11/99**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

THE
MEDICAL PROTECTIVE COMPANY
FORT WAYNE INDIANA

## *PRODUCT LIABILITY EXCLUSION ENDORSEMENT*

The following exclusion is added:

any liability arising from a defective good or product invented, designed, manufactured, or sold by the Insured or any Additional Insured.  However, this exclusion shall not apply to liability arising from a good or product which was specifically used by the Insured to provide professional services to the Insured's own patient.

**443**                                                                                                 **Edt.  12/02**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

THE
MEDICAL PROTECTIVE COMPANY
FORT WAYNE INDIANA

## <u>NOTICE</u>

An insurance policy purchased from Medical Protective Company through a risk purchasing group may not be subject to all of the insurance laws and regulations of the State of Texas.

No claim against a risk purchasing group, or its members, shall be entitled to payments from any insurance insolvency guaranty fund, or similar mechanism in this state.  A purchasing group, or its members, or claimants against the group or its members, may not receive any benefit from such guaranty fund, or similar mechanism, for claims arising under the insurance policies procured through the purchasing group unless the policies are underwritten by an insurer authorized to engage in business in this state and, at the time of the policy issuance:

1.  have capital and surplus of at least $25 million; or,
2.  insurance companies that are licensed in this state that are members of company groups with combined capital and surplus of at least $25 million, at the time of policy issuance.

At the time of issuance of this policy Medical Protective Company combined capital and surplus does exceed $25 million.

E 628                                                                    ed: 02/10

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

THE
**MEDICAL PROTECTIVE COMPANY**
FORT WAYNE, INDIANA

## *Vicarious Liability Endorsement*

The following exclusion is added to paragraph A:

9.      Any vicarious liability of the Insured arising from professional services rendered or which should have been rendered by any employee of a partnership or corporation or association of which the Insured is an employee or partner or shareholder, unless the Insured is the sole owner of a corporation that is also an Insured or Additional Insured under this policy.

E773                                                                           07/08

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

THE
MEDICAL PROTECTIVE COMPANY
FORT WAYNE INDIANA

## SHARED LIMIT ADDITIONAL INSURED ENDORSEMENT
### (CLAIMS-MADE/INDIVIDUAL)

The policy is amended to include Allied Health Care Professionals as Additional Insureds for any claim for damages arising from professional services rendered or which should have been rendered while acting within the scope of employment for or under the direct control and supervision of the **Named Insured**.

However, the following specialists **shall** not qualify as Allied Health Care Professionals:
physicians, dentists, case managers, certified registered nurse anesthetists, chiropractors, nurse midwives, nurse midwife assistants, nurse practitioners, nurse surgical assistants, occupational therapists, perfusionists, physician assistants, physician surgical assistants, podiatrists, psychologists, registered nurse anesthetists, and respiratory therapists.

In addition, this coverage will not apply if the Allied Health Care Professional:
1.  has other valid and collectible insurance to cover the claim; or
2.  was employed by or acting under the direct control and supervision of an individual or entity other than the **Named Insured** at the time the act or omission giving rise to the claim occurred.

AMENDED AND SUPPLEMENTAL CONDITIONS
The **Named Insured** is defined as the individual listed on the policy under the heading "The Insured" and shall act as the agent for all Additional Insureds with respect to any notice provided under this policy including, but not limited to, notices of cancellation or nonrenewal, endorsements issued to form a part of this policy, premiums due, return premiums, and settlements. The **Named Insured** shall also notify the Company and all Additional Insureds of any changes which might affect the insurance provided under this policy.

The Company shall not compromise any claim against an Additional Insured hereunder without the consent of the **Named Insured**. However, the consent of the **Named Insured** shall be sufficient authority for the Company to compromise any claim against an Additional Insured as it deems expedient.

The Company is under no obligation to offer or provide an Additional Insured with an individual "extension contract" unless such obligation is imposed by state or federal law. However, if the **Named Insured** purchases or is otherwise provided with an "extension contract," the extended reporting period shall also apply to claims filed against the Additional Insureds which would otherwise be covered by the policy and this endorsement.

NO EFFECT ON PER CLAIM OR AGGREGATE LIMITS
The inclusion of Additional Insureds under this endorsement shall not in any way cause the Company's total liability for damages to exceed the stated amount per claim filed for any one incident nor, subject to the same limit per claim filed for each incident, to exceed the stated annual aggregate, regardless of the number of Insureds included under this endorsement and the policy.

793                                                                                                    Ed:  9/05

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

THE
**MEDICAL PROTECTIVE COMPANY**
FORT WAYNE INDIANA

## DEATH, DISABILITY OR RETIREMENT
## CLAIMS-MADE ENDORSEMENT

1.  Paragraph G, H and J are deleted.

2.  The following is added:

G.  Should the insured die or become totally disabled as a result of accident or sickness, the Company further agrees to waive any premium that would normally be due for the "Extension Contract" guaranteed to be offered in the Insuring Agreement "F".

The term "totally disabled" shall mean that the Insured is permanently, wholly, and continuously disabled and prevented from performing any and every duty pertaining to his or her profession and is under the regular care and attendance of a legally qualified physician and other than himself or herself. Disability resulting from drug or alcohol abuse shall not qualify towards "totally disabled".

H.  If at any time after being continuously insured on a claims-made basis for a minimum of 1 year with the Company, the Insured elects to permanently retire from the practice of medicine, the Company will offer the "extension contract" described above, and will waive any and all premium charges normally associated with such extension. However, such a waiver would only apply if the retroactive date as shown on the policy is at least 48 months prior to the date of retirement.

As used in this endorsement, the term "permanently retire" shall mean that the insured has completely and permanently ceased any practice of medicine for compensation.

The company may require periodic proof that the Insured remains retired from the practice of medicine. By accepting the waiver of the "extension contract" premium, the Insured agrees that upon the resumption of the practice of medicine, the Insured has the duty to inform the company in writing within 15 days following the resumption of practice and has the obligation to pay the premium that would have been due but for the waiver of the "extension contract" premium. In addition, the Insured will be responsible to reimburse the Company for the cost of collections and reasonable attorney fees.

If the Insured fails to purchase the "extension contract" within 45 days following the resumption of practice of medicine, the Insured acknowledges the Company may void the extension contract and that he/she will have no coverage for any claims that would have been reportable under the "extension contract".

J.  In any event, the limits of coverage offered in G, H and I above may not exceed the lowest limits purchased by the insured during the five policy years immediately proceeding death disability or retirement.

E-809                                                                                                  Ed. 07/08

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**THE**
**MEDICAL PROTECTIVE COMPANY**
**FORT WAYNE, INDIANA**

## *REPRESENTATION ENDORSEMENT*

It is hereby agreed and understood that Condition 8 of the policy is hereby deleted and replaced with the following:

By acceptance of this policy, the Insured agrees the statements in any application (new and renewal) submitted to the Company are true and correct. In the event an application was executed or endorsed by the Insured's agent, the Insured acknowledges that the agent has acted under the Insured's express authority and that the Insured has thoroughly reviewed the information contained on the application. Therefore, it is understood and agreed that, to the extent permitted by law, the Company reserves the right to rescind this policy, or any coverage provided herein, for any material misrepresentation made by the Insured.

The representations made by the Insured in the applications are the basis for the coverage provided, as well as the Company's calculation of the applicable premium. As a result, the Insured agrees to inform the Company of any changes to his or her practice. Such material changes shall include, but are not limited to:

    a.   a specialty, procedure performed, or training;
    b.   a practice location;
    c.   an employer;
    d.   a significant change in the number of working hours;
    e.   the revocation, suspension, or restriction of the Insured's professional license, hospital privileges, or DEA license;
    f.   any criminal indictment;
    g.   any settlement or verdict in a lawsuit that was not defended by the Company; or
    h.   any condition that impairs the ability to practice the Insured's specialty,
that were not included on the Insured's most recent application (new or renewal).

In the event the Company is made aware of a material change in the Insured's practice, it reserves the right to recalculate the applicable premium and/or exclude the new practice characteristics from coverage.

It is understood and agreed that the statements made in the Insured's application are incorporated into, and shall form a part of, this policy. Therefore, this policy, any endorsements attached thereto, and the applications embody all agreements between the Insured and the Company, or any of its authorized representatives, relating to this insurance.

All other terms and conditions of the policy remain unchanged.

**E 825**                                                                                                    **Edt. 02/2006**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

THE
MEDICAL PROTECTIVE COMPANY
FORT WAYNE INDIANA

## ENDORSEMENT TO REVISE PARAGRAPHS A and B
## (CLAIMS MADE)

The following provisions of Paragraph A are hereby deleted:

In consideration of the payment of the premium, receipt of which is hereby acknowledged, and subject to the limits of liability and the other terms of this policy, the Company hereby agrees to DEFEND and PAY DAMAGES, in the name and on behalf of the Insured or his estate,

A.  IN ANY CLAIM FOR DAMAGES, FILED DURING THE TERM OF THE POLICY, BASED ON PROFESSIONAL SERVICES RENDERED OR WHICH SHOULD HAVE BEEN RENDERED AFTER THE RETROACTIVE DATE, BY THE INSURED OR ANY OTHER PERSON FOR WHOSE ACTS OR OMISSIONS THE INSURED IS LEGALLY RESPONSIBLE, IN THE PRACTICE OF THE INSURED'S PROFESSION AS HEREINAFTER LIMITED AND DEFINED.

IF REPORTED TO THE COMPANY, THE FOLLOWING SHALL BE DEEMED TO BE A CLAIM FILED DURING THE TERM OF THIS POLICY:

a)  the receipt, by the Insured, of a notice of legal action for damages as described above; or
b)  the receipt, by the Insured, of a notification of an intention to hold the Insured responsible for damages as described above.

These provisions are replaced with the following:

In consideration of the payment of the premium and subject to the limits of liability and the other terms of this policy, the Company hereby agrees to defend and pay damages, in the name and on behalf of the Insured or his or her estate,

A.  In any claim first made, or potential claim first brought to the Insured's attention, during the term of this policy based upon professional services rendered, or which should have been rendered, after the retroactive date by the Insured, or any other person for whose acts or omissions the Insured is legally responsible, in the practice of the Insured's profession as hereinafter limited and defined.

However, the Company shall have no duty to defend or pay damages:
1.  on a claim unless it was reported to the Company during the term of this policy or thirty (30) days thereafter.
2.  on a potential claim unless it was reported to the Company during the term of this policy and the report includes all reasonably obtainable information, including the time, place and circumstances of the incident; the nature and extent of the patient's injuries; and the names and addresses of the patient and any available witnesses.

828

Edt. 12/05
Page 1 of 3

THE
MEDICAL PROTECTIVE COMPANY
FORT WAYNE, INDIANA

The following definitions shall apply throughout the policy:

1. The word "claim" shall mean an express written demand for money as compensation for civil damages.

2. The phrase "first made" shall mean the date the Insured initially received the claim for damages.

3. The phrase "potential claim" shall mean an incident which the Insured reasonably believes will result in a claim for damages.

4. The phrase "first discovered" shall mean the date the Insured initially knew, or reasonably should have known, of a potential claim.

5. The phrase "professional services" shall only include the following:
   (a) the rendering of medical, surgical, dental, or nursing services to a patient and the provision of medical examinations, opinions, or consultations regarding a person's medical condition within the Insured's practice as a licensed health care provider. This shall include first aid rendered at the scene of an accident without expectation of monetary compensation.

   (b) the credentialing of a health care provider, including the review of the provider's fitness and qualification to provide health care services by a professional review board or committee through formally adopted, written procedures.

6. The phrase "retroactive date" shall mean the date shown as the Retroactive Date on declarations at the end of this policy form.

7. The phrase "the term of this policy" shall mean the period of time referred to on the declarations at the end of this policy form in the sentence which begins, "The term of this policy shall begin and end..."  However, the term of this policy may be modified by endorsement upon proper notification to, or from, the Insured.

The following exclusion is added:

\* any liability for a claim based upon facts which the Insured knew, or reasonably should have known, prior to the date the Insured's current and continuous coverage first became effective, were likely to lead to a claim for damages.  This shall include (but is not limited to) any professional services rendered by the Insured, or by any other person for whose acts the Insured is legally responsible, which resulted in:
   - any neurological, sensory, or systemic deficits to a patient (such as brain damage, permanent paralysis, loss of sight or hearing, etc.).
   - permanent damage to a patient related to an injury during the delivery of a child or as the result of the administration of anesthesia.

828

Edt. 12/05
Page 2 of 3

THE
MEDICAL PROTECTIVE COMPANY
FORT WAYNE, INDIANA

    - limitations on a patient's activities of daily living (including the loss of a limb).
    - the death of a patient.
However, this exclusion shall only apply if the Insured had the ability to report the claim to a prior carrier.

Paragraph B of the policy is hereby deleted and replaced with the following:

B. Upon receipt of written notice of a claim covered under the terms and conditions of this policy, the Company shall immediately assume its responsibility for the defense of the claim. The Company shall maintain its defense of a covered claim until final judgment is rendered, or until any appeal, writ of error, or other post-verdict proceeding deemed reasonable and appropriate by the Company is exhausted. The Company shall provide a defense without limit as to the amount expended. However, the Company shall not be obligated to defend any claim after the applicable limit of this policy has been exhausted by the payment of damages resulting from a judgment or settlement.

The following provision from Paragraph E is hereby deleted:
Furthermore, for the purpose of determining the Company's liability, the following shall be considered as arising from one incident:
(a) all injury resulting from a series of acts or omissions in rendering professional services to one person and
(b) all injury arising out of continuous or repeated exposure to substantially the same conditions.

The following provision is added to Paragraph E:
Furthermore, for the purpose of determining the Company's liability, the following shall be considered as arising from one incident:
(a) All injury resulting from a series of acts or omissions in rendering professional services to one person. For the purposes of this section, all injuries to a mother and fetus (or fetuses) from conception through delivery shall constitute one occurrence.
(b) All injury arising out of continuous or repeated exposure to substantially the same conditions.

All other terms and conditions remain unchanged.

828

Edt. 12/05
Page 3 of 3

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

THE
MEDICAL PROTECTIVE COMPANY
FORT WAYNE INDIANA

### *AMENDMENT TO BUSINESS ENTERPRISE EXCLUSION*

The following exclusion is hereby deleted:

any liability growing out of the ownership, operation or supervision by the Insured or an employee of the Insured of (a) any hospital, sanitarium, clinic with bed and board facilities or (b) any business enterprise, whether or not related to patient care and/or treatment.

The following exclusion is hereby added:

any liability arising from activity of an Insured, or an employee of the Insured, as a proprietor, shareholder, officer, administrator, committee member, director, or medical director of any hospital, sanitarium, clinic, nursing home, surgicenter, blood bank, commercial laboratory, health maintenance organization, preferred provider organization, or other professional or business enterprise, unless the liability arises from the Insured's provision of treatment to a patient.

**831**                                                                                          **Ed:  06/06**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**THE
MEDICAL PROTECTIVE COMPANY
FORT WAYNE, INDIANA**

## LIMITED PUNITIVE DAMAGES COVERAGE ENDORSEMENT

It is hereby agreed and understood that the following exclusion:

> any punitive damages or damages over and above actual compensatory damages, which may be assessed against the Insured

shall not apply to a claim for damages brought against the Insured as a result of professional services rendered in an "exempted state." However, the following exclusion shall be substituted for professional services rendered in the State of Oklahoma:

> any punitive damages or damages over and above actual compensatory damages; except that this exclusion will not apply to the Insured's vicarious liability for punitive damages as a result of the acts or omissions of a person for whom the Insured is legally responsible unless the Insured was grossly negligent.

Exempted State(s):    *Alabama, Arkansas, Arizona, Georgia, Kentucky, Louisiana, North Carolina, South Carolina, Tennessee, Virginia*

All other terms and conditions of the policy remain unchanged.

**E996**                                                                 **Ed. 09/08**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

THE
MEDICAL PROTECTIVE COMPANY
FORT WAYNE INDIANA

## ADMINISTRATIVE COVERAGE ENDORSEMENT

The following coverages are added to the policy:

Defense Cost Reimbursement
The Company will reimburse reasonable expenses incurred by the Insured at the Company's request to assist in the investigation and defense of a claim. Payment for actual loss of earnings shall not exceed $250 for each day the Insured is required to attend hearings and trials.

Disciplinary and Licensure Coverage
The Company's obligation to defend "any claim for damages" as provided for in the Policy is clarified to include the defense of any disciplinary, licensure or similar administrative proceeding brought against an Insured, subject to the following restrictions:

1. The proceeding must arise from the rendering or failure to render professional services to a patient which would otherwise be covered under the policy.

2. Either:
   a. the proceeding must be filed during the Company's defense of the Insured in a claim for damages arising from the same acts or omissions as such claim; or
   b. the Company must determine a claim for damages is likely to be made against the Insured as a result of the same act or omission.

3. The Company will not pay more than $100,000 on behalf of an Insured for any single proceeding. Furthermore, the Company will not pay more than $100,000 on behalf of an Insured for all such proceedings covered under this policy.

4. The Company shall have the right to select the defense counsel assigned to defend the Insured.

5. The Company will not pay any fines, penalties, or other costs assessed against the Insured as a result of any such proceeding.

1021                                                                                      01/15

*************************************************************************************

THE
MEDICAL PROTECTIVE COMPANY
FORT WAYNE INDIANA

## OTHER INSURANCE

In respect to condition 4, the first sentence is deleted and replaced by the following:

Other insurance:   The insurance afforded by this policy is primary insurance, except when the insured has other valid and collectible insurance applicable to a loss covered by this policy, in which event this insurance shall be excess over such other valid and collectible insurance.

1072                                                                                            09/15

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**THE**
## MEDICAL PROTECTIVE COMPANY
### FORT WAYNE, INDIANA

## TEXAS CANCEL/NONRENEW

Condition 7 is amended to add the following:

If this policy is cancelled or nonrenewed at the Company's request, other than for nonpayment of premiums or because the insured is no longer licensed, the Company shall give at least 90 days written notice to the Insured and shall state in the notice the reason for cancellation or nonrenewal. Such notice of cancellation may only be given within the frist 90 days from the effective date of the policy.

Condition 10 is added:

If the renewal premium is to be increased, the Company shall give at least 90 days written notice to the Insured and shall state the amount of the increase.

1073                                                                            09/15

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**THE**
**MEDICAL PROTECTIVE COMPANY**
**Fort Wayne Indiana**

## *TEXAS CLAIMS NOTICE*

### IMPORTANT NOTICE

To obtain information or make a complaint:

You may call Medical Protective's toll-free telephone number for information or to make a complaint at:
**1-800-463-3776**

You may also write to The Medical Protective Company at:
5814 Reed Road
Fort Wayne, Indiana 46835

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:
**1-800-252-3439**

You may write the Texas Department of Insurance:
P.O. Box 149104
Austin, TX 78714-9104
Fax: (512) 490-1007
Web: http://www.tdi.texas.gov
E-mail: ConsumerProtection@tdi.texas.gov

**PREMIUM OR CLAIM DISPUTES:**
Should you have a dispute concerning your premium or about a claim you should contact the agent or Medical Protective first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

**ATTACH THIS NOTICE TO YOUR POLICY:** This notice is for information only and does not become a part or condition of the attached document.

### AVISO IMPORTANTE

Para obtener información o para someter una queja:

Usted puede llamar al número de teléfono gratis de Medical Protective para información o para someter una queja al:
**1-800-463-3776**

Usted también puede escribir a Medical Protective:
5814 Reed Road
Fort Wayne, Indiana 46835

Puede comunicarse con el Departamento de Seguros de Texas para obtener información acerca de compañías, coberturas, derechos o quejas al: **1-800-252-3439**

Puede escribir al Departamento de Seguros de Texas:
P.O. Box 149104
Austin, TX 78714-9104
Fax: (512) 490-1007
Web: http://www.tdi.texas.gov
E-mail: ConsumerProtection@tdi.texas.gov

**DISPUTAS SOBRE PRIMAS O RECLAMOS:**
Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con el agente o la compañía primero. Si no se resuelve la disputa, puede entonces comunicarse con el departamento (TDI).

**UNA ESTE AVISO A SU PÓLIZA:** Este aviso es sólo para propósito de información y no se convierte en parte o condición del documento adjunto.

1080                                                                                      01/15

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

THE
MEDICAL PROTECTIVE COMPANY
FORT WAYNE, INDIANA

## *CYBERSHIELD SUPPLEMENTARY COVERAGE DECLARATIONS*
## *CYBER-LIABILITY COVERAGE*
### (INDIVIDUAL POLICY)

| | |
|---|---|
| Effective Date: | 07/01/2018 |
| Expiration Date: | 07/01/2019 |

| Per Claim Coverage Limit: | | |
|---|---|---|
| | A. | $50,000 |
| | B. | $50,000 |
| | C. | $50,000 |
| | D. | $50,000 |

| | |
|---|---|
| Annual Aggregate Limit: | $50,000 |
| Additional Premium: | $0 |
| Additional Surcharge: | $0 |
| Additional Taxes: | $0 |
| Total Coverage Premium: | $0 |

7500                                                                      01/12
******************************************************************************

THE
**MEDICAL PROTECTIVE COMPANY**
FORT WAYNE INDIANA

*CYBER-LIABILITY ENDORSEMENT*
*(CLAIMS-MADE)*

---

## NOTICE:

This Endorsement is separate and distinct from the professional liability coverage to which this Endorsement is attached; therefore, the limits of coverage provided under this Endorsement are in addition to, and do not erode, the limits of liability provided under your professional liability Policy.

This is Claims-Made and Reported Coverage and is considered a stand-alone Endorsement. As such, the coverage provided by this Endorsement is expressly subject to its own terms, conditions, definitions, exclusions, and other provisions as set out below. While attached to, and made a part of, the Policy, this Endorsement is not subject to the same terms, conditions, definitions or exclusions of that Policy or other Endorsements attached thereto, except with regard to the Policy provisions setting out the terms of an extension contract, as well as any cancellation, renewal and statutory notification requirements.

Further, various provisions in this Endorsement restrict coverage. Defense Costs are paid within the Limits of Liability. Read the entire Endorsement carefully to determine rights, duties, and what is and is not covered.

The following provisions are added to the **Policy**:

## SECTION I. INSURING AGREEMENTS

Throughout this Endorsement, the words "us," "we," "our," and "Company" refer to the insurance company listed on the **Policy**. The words "You" and "Your" refer to the **Insured**.

A. **Network Security and Privacy Insurance**

We will pay on behalf of an **Insured** all sums within the Coverage Limit that such **Insured** becomes legally obligated to pay as **Loss** and **Defense Costs** resulting from a **Claim** for a **Network Security Wrongful Act** or **Privacy Wrongful Act first made** against an **Insured** during the **Policy Period** or during any extension of time under an Extension Contract, and reported to us in accordance with the Notice Provisions.

B. **Regulatory Fines and Penalties Insurance**

We will reimburse an **Insured** for all sums within the Coverage Limit that such **Insured** becomes legally obligated to pay as **Regulatory Fines and Penalties** resulting from a **Claim first made** against such **Insured** during the **Policy Period** or during any extension of time under an Extension Contract, and reported to us in accordance with the Notice Provisions.

C. **Patient Notification and Credit Monitoring Costs Insurance**

We will reimburse an **Insured** for all sums within the Coverage Limit that such **Insured** incurs during the **Policy Period** or during any extension of time under an Extension Contract, as **Patient Notification**

7600 (01/12)                                                                 Page 1 of 12

and Credit Monitoring Costs by reason of a **Claim** for a **Privacy Wrongful Act first made** during the **Policy Period**.

D.   **Data Recovery Costs Insurance**

We will reimburse an **Insured** for all sums within the Coverage Limit that such **Insured** incurs during the **Policy Period** or during any extension of time under an Extension Contract, as **Data Recovery Costs** by reason of a **Claim** for a **Data Interference Act first made** during the **Policy Period**.

## SECTION II.   LIMITS OF LIABILITY

As shown in the Supplementary Coverage Declarations:

A.   **Coverage Limits**

1.   The Per Claim Coverage Limit is the maximum amount we will pay or reimburse an **Insured** for any one **Claim first made** during the **Policy Period**, including **Defense Costs**, subject to the Annual Aggregate Limit.

2.   The Per Claim Coverage Limit shall apply to an **Insured Physician**. An **Insured Person** shares in the Per Claim Coverage Limit of the **Insured Physician**. If multiple **Insureds** are jointly involved in the same **Claim**, then the maximum amount payable under this Endorsement for such **Claim**, for all **Insureds** combined, shall not exceed the Annual Aggregate Limit, regardless of the number of **Insureds** involved or persons or organizations asserting **Claims**.

B.   **Annual Aggregate Limit**

1.   The Annual Aggregate Limit is our total limit of liability under this Endorsement, including **Defense Costs**, for all **Claims first made** during the **Policy Period**. In no event will we pay more than the Annual Aggregate Limit. The Annual Aggregate Limit is shared with all **Insureds**.

2.   **Loss**, **Defense Costs**, **Regulatory Fines and Penalties**, **Patient Notification and Credit Monitoring Costs** and **Data Recovery Costs** are part of, and not in addition to, the Per Claim Coverage Limit and the Annual Aggregate Limit. Payment of such amounts reduces the Per Claim Coverage Limit and the Annual Aggregate Limit.

3.   If the Annual Aggregate Limit is exhausted by payment of **Loss**, **Defense Costs**, **Regulatory Fines and Penalties**, **Data Recovery Costs** or **Patient Notification and Credit Monitoring Costs**, or any combination thereof, our obligations under this Endorsement shall be deemed completely fulfilled and extinguished for all **Insureds**.

## SECTION III.   DEFENSE AND SETTLEMENT OF CLAIMS

A.   We have the right and duty to defend any **Claim**, even if the allegations of the **Claim** are groundless, false or fraudulent. We have the right to appoint counsel and to investigate any **Claim** as we deem necessary. We shall not be obligated to investigate, defend, pay or settle any **Claim** after the Per Claim Coverage Limit and/or the Annual Aggregate Limit are exhausted.

7600 (01/12)                                                      Page 2 of 12

THE
**MEDICAL PROTECTIVE COMPANY**
FORT WAYNE INDIANA

B.      An **Insured** shall not incur any **Loss, Defense Costs, Regulatory Fines and Penalties, Data Recovery Costs** or **Patient Notification and Credit Monitoring Costs,** or settle, or offer to settle any **Claim,** assume any contractual obligation, admit liability, voluntarily make any payment, confess or otherwise consent to any damages or judgments with respect to any **Claim** without our prior written consent, which shall not be unreasonably withheld. We shall not be liable for any **Loss, Defense Costs, Regulatory Fines and Penalties, Data Recovery Costs** or **Patient Notification and Credit Monitoring Costs,** settlement, assumed obligation, admitted liability, voluntary payment, confessed damages or judgments to which we have not consented.

C.      We have the right to settle any **Claim** in the manner and to the extent that we believe is proper; however, we will not settle any **Claim** without Your consent. Our obligation to pay shall in all events be subject to the Per Claim Coverage Limit and the Annual Aggregate Limit.

**SECTION IV.**       **DATA RECOVERY COSTS ADJUSTMENT**
                                   **(Insuring Agreement D - Data Recovery Costs Insurance)**

A.      In the event that **Data** belonging to an **Insured** has been compromised, damaged, lost, erased, eradicated, altered, corrupted or tainted by reason of a **Data Interference Act**, such **Insured** shall, as soon as practicable following notification to us in accordance with the Notice Provisions, provide us with a sworn written statement detailing:

    1.   the harm or damage known to have resulted from the **Data Interference Act**;

    2.   the circumstances under which the **Insured** first discovered the **Data Interference Act**;

    3.   the proposed plan for remediation and/or recovery of said **Data**, including the name and identity of the professional or consultant proposed for carrying out the remediation and/or recovery;

    4.   the proposed or estimated costs of the remediation and/or recovery; and,

    5.   the proposed date and time for both commencing and completing such remediation and/or recovery.

B.      No **Data Recovery Costs** shall be incurred without our prior written consent, and we shall not be responsible to pay on behalf of, or reimburse, any **Insured** for any **Data Recovery Costs** that were not so approved. Notwithstanding the foregoing, an **Insured** may incur **Data Recovery Costs** without our prior written approval if the circumstances are such that there is no practical or reasonable opportunity to obtain our prior written consent and the exigencies then and there existing require immediate action to mitigate the potential for damages or harm to an **Insured** or to third parties.

**SECTION V.**       **DEFINITIONS**

With respect to the coverage provided by this Endorsement, certain words are shown in bold and are defined as follows:

A.      **Attorney** means any individual duly licensed to practice law at the time and place legal services are rendered.

THE
**MEDICAL PROTECTIVE COMPANY**
FORT WAYNE INDIANA

B.      **Bodily Injury** means physical injury, sickness, disease, pain of death, and if arising out of the foregoing, mental anguish, mental injury, shock, humiliation or emotional distress sustained by a person at any time.

C.      **Claim** means:

1.   with respect to Insuring Agreement A only:

   a.   any written demand for monetary damages or non-monetary relief against an **Insured**;
   b.   any civil proceeding or arbitration proceeding against an **Insured**, commenced by the service of a complaint or similar pleading or notification;
   c.   any written request to toll or waive a statute of limitations relating to a potential **Claim** against an **Insured**, including any appeal therefrom; or
   d.   a **Government Investigation** commenced against an **Insured** by letter notification, complaint or order of investigation.

2.   with respect to Insuring Agreement B only, a **Government Investigation** commenced against an **Insured** by letter notification, complaint or order of investigation, and which results in notification to an **Insured** that such **Insured** is legally obligated to pay **Regulatory Fines and Penalties**.

3.   with respect to Insuring Agreement C only, a written report by an **Insured**, to us, of an actual or potential **Privacy Wrongful Act**.

4.   with respect to Insuring Agreement D only, a written report by an **Insured** to us of a **Data Interference Act** in accordance with the provisions of Section IV of this Endorsement, captioned as **Data Recovery Costs Adjustment**.

D.      **Criminal Proceeding** means any governmental action for enforcement of criminal laws, including those offenses for which conviction could result in imprisonment and/or criminal fine(s).

E.      **Data** means any and all information stored, recorded, appearing or present in or on an **Insured's** computer systems, electronic communication systems, devices and telephony, including, but not limited to, information stored, recorded, appearing or present in or on such **Insured's** electronic and computer databases, the Internet, intranet, extranet and related websites, facsimiles and electronic mail.

F.      **Data Interference Act** means any act, whether intentional, malicious, reckless or negligent, by a party other than an **Insured** that occurs during the **Policy Period** and is carried out without an **Insured's** consent or knowledge, which act causes harm or damage to the **Data** maintained by such **Insured**, including but not limited to interference with, or intrusion or incursion into, any of such **Insured's** computer systems, electronic communication systems, devices and telephony, including, but not limited to, such **Insured's** electronic and computer databases, the Internet, intranet, extranet and related websites, facsimiles and electronic mail.

G.      **Data Recovery Costs** mean all reasonable and necessary sums incurred by an **Insured**, with our prior written consent, to recover and/or replace **Data** that is compromised, damaged, lost, erased, eradicated, altered, corrupted or tainted by reason of a **Data Interference Act**, including but not limited to the costs associated with the repair or replacement of any software that is compromised, damaged, lost, erased, eradicated, altered, corrupted or tainted by reason of a **Data Interference Act**. **Data Recovery Costs** shall not include:

1.   the costs of repairing or replacing any hardware, equipment or wiring;

THE
**MEDICAL PROTECTIVE COMPANY**
FORT WAYNE, INDIANA

    2.   wages, salaries or other compensation or income of any **Insured** or any **Insured's** employees; or,

    3.   the costs of recovering or replacing data for any third party, or any data that was not within the care, custody or control of an **Insured**.

H.    **Defense Costs** mean reasonable and necessary **Attorney's** fees for legal services rendered and associated costs and expenses incurred in the investigation, defense and appeal of any covered **Claim** under Insuring Agreement A; but **Defense Costs** shall not include: 1) any wages, salaries or other compensation or income of any **Insured** or any **Insured's** employees; or 2) costs associated with the adoption or implementation of any corporate integrity agreement, compliance program or similar provision regarding the operations of an **Insured's** business, negotiated as part of a settlement with, or by order of, any federal, state or local agency as a result of a **Government Investigation**.

I.    **First made**, when used in reference to Insuring Agreements A and B, means the date on which an **Insured** first receives notice of a **Claim**. When used in reference to Insuring Agreements C and D, **First Made** means the date on which we receive your written report of an actual or potential **Privacy Wrongful Act** or a **Data Interference Act**. All **Claims** arising out of the same **Network Security Wrongful Act, Privacy Wrongful Act** or **Data Interference Act** or **Interrelated Network Security Wrongful Acts, Interrelated Privacy Wrongful Acts** or **Interrelated Data Interference Acts** shall be deemed one **Claim**, and such **Claim** shall be deemed to be **first made** on the date the earliest of such **Claim(s)** is **first made**.

J.    **Government Investigation(s)** means an investigation conducted by any federal, state or local government agency or authority, the subject matter of which is a **Privacy Wrongful Act** committed by an **Insured**.

K.    **Insured** means:

    1.   any **Insured Person**; and

    2.   any **Insured Physician**.

L.    **Insured Person** means any individual, other than an **Insured Physician**, acting within the course and scope of employment for, or under the direct control and supervision of, the **Insured Physician** and any additional insured, agent or solo corporation as shown in the **Policy**, whose acts subject the **Insured Physician** to vicarious liability, but only when a **Claim** is jointly made against the **Insured Physician** and the **Insured Person**;

M.    **Insured Physician** means the licensed physician named in the **Policy**.

N.    **Interrelated Data Interference Acts** means more than one **Data Interference Act** which have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of related facts, circumstances, situations, events, transactions or causes.

O.    **Interrelated Network Security Wrongful Acts** means more than one **Network Security Wrongful Act** which have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of related facts, circumstances, situations, events, transactions, or causes.

7600 (01/12)                                                       Page 5 of 12

**THE**
**MEDICAL PROTECTIVE COMPANY**
**FORT WAYNE, INDIANA**

P.    **Interrelated Privacy Wrongful Acts** means more than one **Privacy Wrongful Act** which have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of related facts, circumstances, situations, events, transactions, or causes.

Q.    **Loss** means the amount that an **Insured** is legally obligated to pay as a result of a covered **Claim** under Insuring Agreement A, including damages and judgments (including prejudgment and post-judgment interest awarded against an **Insured** on that part of any judgment paid or to be paid by us); any legal fees and costs awarded pursuant to such judgments; and settlements negotiated with our consent.

    **Loss** does not include:

    1.    taxes;

    2.    any amount for which any **Insured** is absolved from legal responsibility to make payment to any third party;

    3.    amounts owed under, or assumed by, any contract;

    4.    any return, withdrawal, restitution or reduction of professional fees, profits or other charges;

    5.    punitive or exemplary damages, or the multiple portion of any multiplied or trebled damages;

    6.    criminal fines or penalties or **Regulatory Fines and Penalties**; or,

    7.    any matters that are uninsurable under applicable law.

R.    **Network Security Wrongful Act** means an actual or alleged act, error or omission by an **Insured**, including an unauthorized act by an employee of such **Insured**, which results in the unauthorized access or unauthorized use of such **Insured's** computer system, the consequences of which include, but are not limited to:

    1.    the failure to prevent unauthorized access to, use of or tampering with a third party's computer systems;

    2.    the inability of an authorized third party to gain access to an **Insured's** services;

    3.    the failure to prevent denial or disruption of Internet service to an authorized third party;

    4.    the failure to prevent identity theft or credit/debit card fraud; or,

    5.    the inadvertent transmission of harmful or corrupt software code, including but not limited to computer viruses, Trojan horses, worms, logic bombs, spy ware or spider ware.

S.    **Patient Notification and Credit Monitoring Costs** means all reasonable and necessary expenses incurred by an **Insured**, with our prior written consent, in notifying third persons of any actual or potential **Privacy Wrongful Act**, including, but not limited to:

    1.    legal expenses;

    2.    computer forensic and investigation fees;

7600 (01/12)                                                                          Page 6 of 12

THE
**MEDICAL PROTECTIVE COMPANY**
FORT WAYNE INDIANA

3.   public relations expenses;

4.   postage expenses;

5.   advertising expenses; or,

6.   the costs of credit monitoring services provided to affected individuals for up to a period of 12 months from the date of enrollment in such credit monitoring services.

T.   **Policy** means, collectively, the contract providing professional liability insurance coverage, any endorsements, and all applications, including supplemental pages or other attachments, which are incorporated into the **Policy**.

U.   **Policy Period** means the period of time specified as such in the **Policy**.

V.   **Privacy Wrongful Act** means any of the below, whether actual or alleged, but only if committed or allegedly committed by an **Insured** or an employee of an **Insured**:

1.   breach of confidence, invasion, infringement, interference or violation of any rights to privacy including, but not limited to, breach of Your privacy statement, breach of a person's right of publicity, false light, intrusion upon a person's seclusion, public disclosure of a person's private information, intrusion or misappropriation of a person's name or likeness for commercial gain; or

2.   any breach or violation of U.S. federal, state and local statutes and regulations associated with the control and use of personally identifiable financial or medical information, including but not limited to:

   a.   the Health Insurance Portability and Accountability Act of 1996 (Public Law 104-191) ("HIPAA"), including Title II which requires protection of confidentiality and security of electronic protected health information, and the rules and regulations promulgated thereunder as they currently exist and as amended, including related state medical privacy laws as they currently exist and as amended;
   b.   Gramm-Leach-Bliley Act of 1999 (G-L-B), also known as the Financial Services Modernization Act of 1999, including sections concerning security protection and standards for customer records maintained by financial services companies, and the rules and regulations promulgated thereunder as they currently exist and as amended;
   c.   State Attorneys General and Federal Trade Commission enforcement actions regarding the security and privacy of consumer information;
   d.   governmental privacy protection regulations or laws, as they currently exist now or in the future, which require commercial Internet sites or on-line services that collect personal information or medical information (as defined by such laws or acts) to post privacy policies and adopt specific privacy controls or to notify those impacted by identity or data theft, abuse or misuse;
   e.   federal and state consumer credit reporting laws, such as the Federal Fair Credit Reporting Act (FCRA); and
   f.   the Health Information Technology for Economic and Clinical Health Act ("HITECH"), Title XIII of the American Recovery and Reinvestment Act ("ARRA") of 2009.

W.   **Property Damage** means injury to tangible property, including all resulting loss of use of that property, and loss of use of tangible property that is not physically injured.

7600 (01/12)                                                                                         Page 7 of 12

THE
MEDICAL PROTECTIVE COMPANY
FORT WAYNE, INDIANA

X.    **Regulatory Fines and Penalties** means any administrative fines or penalties an **Insured** becomes legally obligated to pay as a result of a covered **Government Investigation**. **Regulatory Fines and Penalties** shall not include any criminal fines or penalties or sanctions of any nature.

## SECTION VI.        NOTICE PROVISIONS

A.    **Notice of Claim**

    1.    With respect to any **Claim** under Insuring Agreement A or B, the **Insured** shall, as a condition precedent to his or her rights to payment under this Endorsement, give us written notice of any **Claim** as soon as practicable during the **Policy Period**, but in no event later than sixty (60) days after the **Policy** expiration date, or during any extension of time under an Extension Contract. With respect to any **Claim** under Insuring Agreement C or D, the **Insured** shall, as a condition precedent to his or her rights to payment under this Endorsement, give us written notice of any **Claim** as soon as practicable during the **Policy Period** or during any extension of time under an Extension Contract. The **Insured** shall provide us with copies of all documentation comprising the **Claim** as well as all authorization, cooperation, or assistance as we may require. With respect to any **Claim** under Insuring Agreement D, the **Insured** shall also comply with the provisions of Section IV of this Endorsement, captioned as **Data Recovery Costs Adjustment**, as a further condition precedent to coverage.

    2.    We are not obligated to pay any **Loss, Defense Costs, Regulatory Fines and Penalties, Patient Notification and Credit Monitoring Costs** or **Data Recovery Costs** (except as provided in Section IV of this Endorsement) incurred prior to notification of a **Claim**.

B.    **Notice of Potential Claim**

If, during the **Policy Period**, an **Insured** first becomes aware of any facts or circumstances which could give rise to a **Claim** covered under this Endorsement, and if such **Insured**, during the **Policy Period**, provides us with written notice of:

    1.    such facts and circumstances;

    2.    the nature of the alleged or potential damages;

    3.    the identity of the potential claimants;

    4.    the manner in which the **Insured** first became aware of the circumstances; and,

    5.    the consequences which have resulted or may result,

then any **Claim** subsequently arising from such circumstances will be deemed **first made** on the date such notice was given to us.

## SECTION VII.        EXCLUSIONS

We are not obligated to defend any **Claim**, nor to or pay or reimburse any **Loss, Defense Costs, Regulatory Fines and Penalties, Data Recovery Costs** or **Patient Notification and Credit Monitoring Costs:**

THE
MEDICAL PROTECTIVE COMPANY
Fort Wayne, Indiana

A.    Based upon, arising out of, or attributable to any **Network Security Wrongful Act**, **Privacy Wrongful Act** or **Data Interference Act**, or any fact, circumstance, or situation:

1.    that was the subject of written notice to any insurer given under any other policy of insurance, or before the effective date of this Endorsement;

2.    that was the subject of any written demand made prior to the effective date of this Endorsement for monetary damages, administrative or arbitration proceeding, or litigation against any **Insured**, or the same or substantially the same fact, circumstance, or situation underlying or alleged in the prior matter;

3.    that was identified in any summary or statement of claims or potential claims submitted in connection with the application for insurance;

4.    that any **Insured** had knowledge of prior to the effective date of this Endorsement, and which could reasonably be expected to give rise to a **Claim**.

B.    For, based upon, arising from, or in any way related to:

1.    the actual, alleged or threatened discharge, dispersal, release or escape of pollutants; or

2.    any direction, request or voluntary decision to test for, abate, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants, nuclear material or nuclear waste.

Pollutants include, but are not limited to, any solid, liquid, gaseous or thermal irritant or contaminant, including mold, smoke, vapor, soot, fumes, acids, alkalis, chemicals, odors, noise, lead, oil or oil products, radiation, asbestos or asbestos-containing products and waste, and any electric, magnetic or electromagnetic field of any frequency.  Waste includes, but is not limited to, material to be recycled, reconditioned or reclaimed;

C.    Based upon, arising out of, or attributable to, liability of others assumed by any **Insured** under any contract or agreement, except to the extent such **Insured** would have been liable in the absence of the contract or agreement;

D.    Based upon, arising out of, or attributable to any breach of contract, warranty or guarantee, except that with respect to allegations of breach of contract, this exclusion shall not apply to the extent any **Insured** would have been liable in the absence of such contract;

E.    Based upon, arising out of, or attributable to any business, joint venture, partnership or enterprise owned, controlled, operated or managed in whole or in part by any **Insured** not named in the **Policy**; nor will this Endorsement respond to any **Claim** which does not arise out of the practice of the **Insured's** profession;

F.    Based on, arising out of, or in any way involving any **Insured** gaining in fact any profit, remuneration or financial advantage to which such **Insured** was not legally entitled;

G.    For, based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any deliberately dishonest, malicious or fraudulent act or omission or any willful violation of law by any **Insured**, if judgment or other final adjudication adverse to such **Insured** establishes such an act, omission or willful violation;

THE
MEDICAL PROTECTIVE COMPANY
FORT WAYNE, INDIANA

H.  That is covered in whole, or in part, under any other provision of this **Policy,** or under a General Liability, Commercial General Liability, or other Professional Liability Insurance Policy;

I.  For, based upon, arising out of, or in any way related to the False Claims Act, or any similar federal or state law, rule or regulation concerning billing errors or fraudulent billing practices or abuse;

J.  For, based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving infringement of any patent or trade secret;

K.  For, based upon, arising from, or in any way related to price fixing, restraint of trade or a violation of any securities or anti-trust laws;

L.  Based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any employment or employment-related matters;

M.  For, based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged **Bodily Injury** or **Property Damage**;

N.  Based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving harassment or discrimination, including but not limited to harassment or discrimination because of or relating to race, creed, color, age, sex, sexual orientation or preference, national origin, religion, handicap, disability, political affiliation or marital status;

O.  Based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged electrical failure, including electrical power interruption, surge, brownout or blackout;

P.  Based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged malfunction or defect of any hardware, equipment or component;

Q.  Brought by or on behalf of any **Insured**, or any entity that is owned, in whole or in part, by any **Insured**, or any entity directly or indirectly controlled, operated or managed by any **Insured**, or any entity that is a parent, affiliate or subsidiary of any entity in which any **Insured** is a partner, or any person who is a joint venturer or partner of any **Insured**; provided, however, this Exclusion shall not apply to an otherwise covered **Claim** by an employee of any **Insured** alleging a **Privacy Wrongful Act**;

R.  For, based upon, arising out of, or in any way involving any violation of any United States of America economic or trade sanctions, including but not limited to, sanctions administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC");

S.  Based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any **Insured's** failure to render professional services;

T.  Based upon, directly or indirectly resulting from, in consequence of, or in any way involving loss of business income arising from the interruption, suspension or degradation of any **Insured's** own computer network; or,

U.  Based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any **Criminal Proceeding**.

                                                                      Page 10 of 12

THE
MEDICAL PROTECTIVE COMPANY
FORT WAYNE, INDIANA

## SECTION VIII.        GENERAL CONDITIONS

A.    **Extension Contract**

1.  In the event of non-renewal or cancellation of a Claims-Made **Policy** to which this Endorsement attaches, an **Insured Physician's** option to buy an Extension Contract shall apply to the coverage provided under this Endorsement and shall be subject to the terms and conditions of the extension contract provisions of the **Policy**, except as noted herein. If purchased, the Extension Contract will extend the coverage provided under this Endorsement for a period of up to one (1) year immediately following the termination of the **Policy**, but only for **Claims first made** during the Extension, which arise out of **Network Security Wrongful Acts**, **Privacy Wrongful Acts** or **Data Interference Acts** that actually or allegedly take place prior to the non-renewal or cancellation of the **Policy**.

2.  In the event an **Insured Physician** dies, becomes permanently disabled, or retires from the practice of medicine while a Claims-Made **Policy** is in force and the Company offers an Extension Contract, such Extension Contract will extend the coverage provided under this Endorsement for a period of up to one (1) year, but only for **Claims first made** during the Extension which arise out of **Network Security Wrongful Acts**, **Privacy Wrongful Acts** or **Data Interference Acts** that actually or allegedly take place prior to such **Insured Physician's** death, permanent disability or retirement, whichever is applicable.

3.  In the event of non-renewal or cancellation of an Occurrence **Policy** to which this Endorsement attaches, the Company agrees to extend the coverage provided under this Endorsement for a period of up to one (1) year immediately following the termination of the **Policy**, but only for **Claims first made** during the Extension, which arise out of **Network Security Wrongful Acts**, **Privacy Wrongful Acts** or **Data Interference Acts** that actually or allegedly take place prior to the non-renewal or cancellation of the **Policy**.

B.    **Subrogation**

We shall be subrogated to the rights of any **Insured** to the extent of any payments made, or as allowed by law. An **Insured** shall do nothing to prejudice those rights. At our request, an **Insured** shall bring suit or transfer those rights to us. **Insureds** shall also help us enforce our rights under this Endorsement and the **Policy**.

C.    **Arbitration**

Notwithstanding any other provision of this Endorsement or the **Policy**, any irreconcilable dispute between you and us is to be settled by arbitration in accordance with the then current rules of the American Arbitration Association. Judgment upon the award may be entered in any court having jurisdiction. The arbitrator has the power to decide any dispute between you and us concerning the application or interpretation of this Endorsement. The arbitrator shall have no power to change or add to the provisions of this Endorsement. Prior to the beginning of arbitration, each disputing party shall pay an equal share of the estimated cost of arbitration.

D.    **Other Insurance**

This insurance shall apply in excess of any other valid and collectible insurance available to any **Insured**, including any retention or deductible portion thereof. In the event a **Claim** attaches to more than one Cyber-Liability Endorsement issued by the Company, any payments for **Loss**, **Defense Costs**,

7600 (01/12)                                                                                              Page 11 of 12

**THE**
**MEDICAL PROTECTIVE COMPANY**
**FORT WAYNE, INDIANA**

**Regulatory Fines and Penalties**, **Patient Notification and Credit Monitoring Costs** and/or **Data Recovery Costs** shall be applied first to any Cyber-Liability Endorsement attached to a Partnership-Corporation policy, then to any other Cyber-Liability endorsement issued by the Company. The Company has the sole discretion to allocate **Claims** paid.

All other terms and conditions of the **Policy** remain unchanged.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

```
#00474
MEDPLUS
9555 W SAM HOUSTON PKWY S STE 475
HOUSTON TX   77099-2168
```

689065
RN

**THIS IS NOT A BILL - INVOICING UNDER SEPARATE COVER**

THE
**MEDICAL PROTECTIVE COMPANY**
FORT WAYNE, INDIANA

MRUGESHKUMAR KANAIYALAL SHAH, MD

## EXTENSION CONTRACT ENDORSEMENT

*This endorsement is attached to and made a part of Policy No. 689065 which has a policy term from 07/01/2018 to 07/01/2019.*

*In consideration of an additional premium of* ███████*, it is hereby understood and agreed that the period for the filing of a claim in accordance with Section A of this policy is extended but only for the filing of those claims covered by the policy to which this endorsement is attached for professional services rendered or which should have been rendered on or after the policy retroactive date of 07/01/2003 and prior to the policy expiration date 07/01/2019. The limits of coverage which shall apply to claims reported under this endorsement are $250,000 per claim filed and $750,000 as an aggregate amount for all claims reported under this endorsement.*

*It is further agreed that this endorsement may not be cancelled or restricted in any way, other than for non-payment of premium when due.*

*E 780*                                                                                      *ed: 07/08*

*THE MEDICAL PROTECTIVE COMPANY*

_____          _____
*Countersigned*                                           *Vice President, Underwriting*
STEVEN M. SIMMONS AGENT FOR MPSA TEXAS PURCHASING GROUP, INC

```
#00474
MEDPLUS
9555 W SAM HOUSTON PKWY S STE 475
HOUSTON,TX 77099-2168
```

689065