# EXHIBIT C



**Charles C. Keeble, Jr.**
**214.740.4018 | Direct Dial**
charles.keeble@wickphillips.com
www.wickphillips.com

October 21, 2024

*Via Email: Delano.McGregor@medpro.com*

The Medical Protective Company
Attention: Delano McGregor, Claims Consultant
5814 Reed Road
Fort Wayne, IN 46835

Re:    Claim:                    Julia Hubbard v. Mrugeshkumar Shah, M.D.
       Insured:                  Mrugeshkumar Shah, M.D.
       Policy Numbers:           689065 and C5159 (collectively, the "Policy")

Dear Mr. McGregor:

This firm represents Dr. Mrugeshhkumar Shah ("Dr. Shah"). This letter responds to The Medical Protective Company's ("TMPC") August 12, 2024 letter denying coverage to Dr. Shah for the above-referenced claim (the "Hubbard Lawsuit"). As demonstrated below, TMPC is obligated to defend Dr. Shah against the Hubbard Lawsuit. Its refusal to do so constitutes a breach of its obligations under the Policy and Chapters 541 and 542 of the Texas Insurance Code.

**<u>TMPC's Duty to Defend is Governed by the Complaint-Allegation Rule.</u>**

The "complaint-allegation" or "eight corners" rule governs the determination of whether an insurer has a duty to defend its insured. Under this rule, an insurer looks only to the eight corners of the insurance policy and the allegations in the complaint to determine whether a defense is owed. *Zurich American Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 495 (Tex. 2008). An insurer must defend its insured if a plaintiff's factual allegations ***potentially*** support a covered claim, *Zurich,* 268 S.W.3d at 490. So long as the claimant's pleading alleges facts that would be covered if true the duty to defend arises. *APIE v. Garcia*, 876 S.W.2d 842, 848 (Tex. 1994) This is true even if the allegations are groundless, false or fraudulent. *Heyden Newport Chem Corp v. S. Gen. Ins. Co.*, 387 S.W.2d 22, 24 (Tex. 1965)

In determining whether the insurer has a duty to defend, the pleadings are to be liberally construed, and all doubts regarding the existence of a duty to defend are resolved in favor of the duty. *Zurich*, 268 S.W.3d at 491. The duty to defend is not negated by the inclusion of claims that are not covered; rather it is triggered by the inclusion of claims that ***might*** be covered. *Id*. at 491. If potential coverage exists for any portion of a suit brought against the insured, the insurer must defend the entirety of the suit. *Dallas Nat. Ins. Co. v. Sabic Americas,* 355 S.W.3d 111, 117 (Tex. App. – Houston [1st Dist.] 2011, pet. denied).

The Medical Protective Company                                          **WICK PHILLIPS**
October 21, 2024
Page 2 of 8

## TMPC is Obligated to Defend Because the Allegations Against Dr. Shah are Based Upon his Rendition of "Professional Services."

TMPC's refusal to defend Dr. Shah on the grounds that the Hubbard Lawsuit does not involve a negligence claim based upon the rendering or failing to render professional services but is instead a claim for "sex and labor trafficking and violations of RICO" is wrongful. The fact that the Second Amended Complaint ("SAC") does not allege a specific count couched in negligence terms does not preclude TMPC's duty to defend. The facts alleged, not the legal theories asserted, control TMPC's duty to defend. *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997); *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528 (5th Cir. 2004).

This conclusion also follows from the Policy's insuring agreement. The insuring agreement does not limit the afforded coverage to causes of action denominated in negligence or medical malpractice terms. Instead, it ties to "claims" (demands for money as compensation for civil damages) based upon "professional services"[1] rendered, or which should have been rendered, by Dr. Shah. The litmus test for determining whether TMPC must defend is thus whether the factual allegations against Dr, Shah are based upon his alleged rendering, or failure to render, professional services, not the causes of action asserted against him.

The Plaintiffs' factual allegations are based upon Dr. Shah's professional services.[2] The Plaintiffs allege that  Dr. Shah (a) is a  physician, (b) had a  doctor-patient relationship with one or both Plaintiffs,[3] (c) rendered, or failed to render, professional services including, without limitation, alleged mishandling of patient examinations, mis-prescribing medication, and failing to take appropriate steps in response to patient reports of abuse, and (d)  resulting harm / damages. SAC at ¶¶ 14-16, 127-139, 337- 341.  The requirement that a claim against Dr. Shah be based upon his "professional services" is satisfied. TMPC is obligated to defend. *See Swicegood v. The Medical Protective Co.*, 2003 WL 22234928, at *4 - *5 (N. D. Tex. 2003) (noting that the court  previously

---

[1] "Professional services" are defined to mean "the rendering of medical …  services to a patient and the provision of medical examinations, opinions or consultations regarding a person's medical condition within the Insured's practice as a licensed health care provider."

[2] Dr, Shah denies the factual allegations made against him in the Hubbard Lawsuit and all liability to the Plaintiffs in that lawsuit. Nothing in this letter should be construed as an admission that the Plaintiffs' allegations are true or have merit.

[3] The SAC does not specifically refer to the Plaintiffs as Dr. Shah's "patients," but the conclusion that a doctor-patient relationship is alleged is inescapable from a fair reading of the SAC. It is alleged, for example, that Dr. Shah performed medical examinations of, and prescribed medication to, each Plaintiff. SAC at ¶¶ 14-16. A doctor-patient relationship may be inferred from these allegations. *AIX Specialty Ins. Co. v. Shiwach*, 2019 WL 6888515, at *4 (Tex. App. - Dallas 2019, pet. denied) (eight corners rule does not require a court to ignore logical inferences flowing from the facts alleged in the petition). Alternatively, any alleged doubt as to whether a doctor-patient relationship is alleged must also be construed in favor of imposing a duty to defend. *See, e.g., Zurich* 268 S.W.3d at 491; *Allied World Specialty Ins. Co. v. McCathern, PLLC*, 802 Fed. Appx. 128, 132 (5th Cir. 2020).

The Medical Protective Company                                                    **WICK PHILLIPS**
October 21, 2024
Page 3 of 8

concluded that TMPC was obligated to defend a claim against a doctor because the claim involved the doctor's prescribing medications, diagnosing disorders and making treatment recommendations, *i.e.*, "professional services," notwithstanding the fact that the claim also alleged sexual misconduct claims excluded from coverage). This is true notwithstanding that Plaintiffs do not assert a negligence / malpractice cause of action against Dr. Shah. *Merchants*, 939 S.W.2d at 141 (factual allegations, not legal causes of action, control duty to defend determination); *Northfield*, 363 F.3d at 528 (same).

This result is particularly *apropos* here because Plaintiffs' factual allegations regarding Dr. Shah's rendition or failure to render "professional services" are specifically incorporated into the trafficking and RICO claims. *See* SAC at ¶¶ 396, 400, 404 and 414. Thus, TMPC is required to defend even if the trafficking and RICO causes of action alleged by Plaintiffs control TMPC's duty to defend (which they do not). *See, e.g.*, *Uretek (USA) Inc. v. Continental Cas. Co.*, 701 Fed. Appx. 343, 346 (5th Cir. 2017) (holding that insurer had duty to defend misrepresentation, antitrust and statutory unfair competition claims alleging injuries arising out of the insured's disparagement of a competitor and its products under an insuring clause requiring the insurer to defend suits seeking damages arising out of the publication of material that disparages a person's or organization's goods, products or services and noting that the underlying factual allegations, not the legal theories alleged, govern the duty to defend determination); *American Home Assur. Co. v. United Space Alliance LLC*, 378 F.3d 482, 487 & n. 2 (5th Cir. 2004) (insurer had duty to defend breach of contract and fraudulent inducement claims because the facts giving rise to the plaintiff's causes of action included disparagement of the plaintiff's goods, products or services, a covered offense under the policy's personal injury coverage). *See also Waffle House, Inc. v. Travelers Indemn. Co.*, 114 S.W. 3d 601, 612 (Tex. App. – Fort Worth 2003, pet. denied) (insurer obligated to indemnify insured against a tortious interference damages award based on the making of defamatory statements under an insurance policy affording coverage for such statements).

The Plaintiffs' factual allegations do not support TMPC's argument that the services Dr. Shah provided were not "medical services to a patient, but rather services to the Venture to assist in keeping Plaintiffs under control so that they could be easily trafficked." Plaintiffs allege that one or both Plaintiffs were patients of Dr. Shah and his performance of "professional services" on their behalf, including conducting patient examinations and prescribing medication. SAC at ¶¶ 14 -16, 127-139, 337- 341. Plaintiffs do not allege that these professional medical services were rendered to the Venture. Nor could they since the alleged Venture is not a person and thus could not be a patient.

TMPC's argument that the Hubbard Lawsuit does not arise from "professional services" relies on allegations to the effect that the professional medical services Dr. Shah provided to the Plaintiffs assisted, supported and/or allowed the Venture to function. These allegations do not advance TMPC's position. Allegations that the Venture benefited from Dr. Shah's rendition of professional medical services rendered to the Plaintiffs do not amount to allegations that Dr. Shah provided services to the Venture. Nor do these allegations transform the professional medical services that Dr. Shah rendered to the Plaintiffs into services rendered to the Venture.

The Medical Protective Company                                      **WICK PHILLIPS**
October 21, 2024
Page 4 of 8

Even assuming *arguendo* that Plaintiffs allege that Dr. Shah provided services to the Venture, those services were based upon Dr, Shah's rendition of professional services to the Plaintiffs. *See, e.g.*, SAC at ¶¶ 14-16, 129-138, 337-341. The factual allegations regarding Dr, Shah's rendition of professional services to the Plaintiffs are covered by the Policy. TMPC is obligated to defend Plaintiffs' claims based upon such factual allegations. *See, e.g., Uretek,* 701 Fed. Appx. at 346; *American Home,* 378 F.3d at 487 & n.2.

**Dr. Shah's Alleged Professional Services Are Within His Practice as a Licensed Health Care Provider**.

TMPC's argument that "prescribing drugs for the *purpose* of controlling women for sex trafficking does not constitute services within [Dr. Shah's] practice as a licensed health care provider" fails.[4] The relevant question under the Policy's insuring agreement is whether a claim against an insured is based upon professional services, *i.e.*, medical services to a patient, rendered by the insured in the practice of the insured's profession / within the insured's practice as a licensed health care provider. That requirement is satisfied here. The Plaintiffs' claims against Dr. Shah are based upon Dr. Shah's rendition of professional medical services to the Plaintiffs. Those alleged services (patient examinations, prescribing medication etc.) are within Dr. Shah's profession as a licensed health care provider.

TMPC, in contrast, interprets the Policy requirement that the professional services be "within the insured's practice as a licensed health care provider" as also requiring an inquiry into the alleged motive or "purpose" of an insured when rendering the professional medical services. That interpretation must be rejected because it impermissibly re-writes the insuring agreement to reflect an intention not expressed therein. *See United State Fire Ins. Co. v. Scottsdale Ins. Co.*, 264 S.W.3d 160, 170 (Tex. App. – Dalas 2008, no pet.) (recognizing that Texas courts will not re-write an insurance policy by adding additional terms not found in the contract that the parties could have included themselves).

Implicit in TMPC's argument that the Policy requires an inquiry into an insured's alleged purpose or motive is that the allegations against Dr. Shah are limited to allegations of intentional wrongdoing for which coverage cannot exist. This implication, too, must be rejected. The allegations against Dr. Shah are not limited to allegations of intentional wrongdoing. For example, Plaintiffs allege that "[Dr.] Shah knew *or should have known* of the trafficking acts …." 'SAC at ¶ 340 (emphasis added). The allegation that Dr. Shah "knew or should have known" of the trafficking constitutes an alternative allegation of both intentional and negligent conduct requiring TMPC to defend. *Zurich,* 268 S.W.3d at 495. Plaintiffs also allege that the Medical Doctor Defendants (a) acted with reckless disregard of the Venture's improper activities, (b) failed to take appropriate action in response to Plaintiffs' reports of abuse, and (c) should have exercised further professional diligence in prescribing medications. SAC at ¶¶ 130-138. These allegations likewise sound in negligence terms. *See, e.g., State Farm Fire Cas Co. v. S.S.,* 858 S.W.2d 374, 378 (Tex. 1993) (recognizing that reckless conduct is not intentionally wrongful conduct).

---

[4] TMPC denial letter at p. 3 (emphasis added). Dr. Shah strongly disputes that Plaintiffs allege that he prescribed drugs for the purpose of controlling women for sex trafficking. No such allegation appears in the SAC.

The Medical Protective Company                                                   **WICK PHILLIPS**
October 21, 2024
Page 5 of 8

Moreover, in evaluating whether Plaintiffs' claims against Dr. Shah are based upon professional services within his practice as a licensed health care provider, TMPC fails to consider the allegations that Dr. Shah wrote prescriptions in reliance on Dr. Eller's sworn, written conclusions that the Plaintiffs were seriously psychiatrically troubled persons in need of heavy doses of medication. SAC at ¶¶ 8, 14, 127. These allegations support the conclusion that Dr. Shah had a legitimate basis for allegedly ignoring Plaintiffs' claims that the drugs they were being prescribed were being used for improper purposes, further undermining TMPC's position that the clams against Dr. Shah are limited to claims of intentional wrongdoing. Because not all the factual allegations against Dr. Shah involve intentional wrongdoing, TMPC is obligated to defend even assuming for purposes of argument only that Dr. Shah's alleged purposeful conduct is relevant to the determination of whether the professional services he is alleged to have rendered are within his profession as a licensed health care provider. *See Sabic,* 355 S.W.3d at 117*; Swicegood*, 2003 WL 22234928, at *4 -*5 & n. 8.

TMPC's position that it has no obligation to defend a claim against an insured involving allegations of purposeful wrongdoing because such a claim cannot constitute professional services in the practice of an Insured's profession fails in any event. The Policy expressly contemplates that a defense will be provided against such claims. Exclusion 2 provides that the Policy does not cover "payment of damages (BUT WILL DEFEND) in any claim for damages if said damages are in consequence of the performance of a criminal act or willful tort or sexual act."

TMPC's interpretation of the "in the practice of the insured's profession" language as precluding a defense for claims involving alleged purposeful conduct or willful torts must also be rejected because it renders the preserved defense costs coverage for such conduct illusory. Texas courts refuse to interpret insurance policies in such a way as to render the purchased coverage illusory. *See, e.g. Atofina Petrochemicals, Inc. v. Continental Cas. Co.,* 185 S.W.3d 440, 444 (Tex. 2005) (adopting insured's construction of an exclusion where insurer's interpretation would render the coverage illusory); *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 828 (Tex. 1997) (rejecting insurer's proffered interpretation of an insurance policy "occurrence" requirement as rendering the coverage illusory).

Alternatively, TMPC's interpretation of the "in the practice of the insured's profession" language as precluding defense coverage for claims involving alleged purposeful conduct or willful torts notwithstanding the fact that Exclusion 2 preserves defense coverage for such claims renders the Policy ambiguous as to whether TMPC is obligated to defend such a claim. The resulting ambiguity must be construed in favor of coverage for the insured, Dr. Shah. *Hudson Energy Co. v National Union Fire Ins. Co. of Pittsburgh, Pa.,* 811 S.W.2d 552, 555 (Tex. 1991).

### The Enterprise Exclusion Does Not Preclude TMPC's Defense Obligation.

TMPC's reliance on the Business Enterprise Exclusion (the "Enterprise Exclusion") to avoid a defense obligation is misplaced.  TMPC bears the burden of demonstrating that this exclusion precludes coverage. Tex. Inx. Code § 554.002.  TMPC cannot meet its burden for the reasons set forth below.

First, Dr. Shah's alleged liability does not arise from his activity "as a proprietor, shareholder, officer, administrator, committee member, director or medical director," as required by the exclusion. There are no allegations in the SAC that Dr. Shah's alleged activities were undertaken in any of these capacities. Nor are there any allegations that Dr. Shah was acting in one of more of the identified capacities, for a "hospital, sanitarium, clinic, nursing home, surgicenter, blood bank, commercial laboratory, health maintenance organization, preferred provider organization or other professional or business enterprise." Moreover, the "Venture" at issue in the SAC is an alleged criminal enterprise, not "a hospital … or other professional or business enterprise." SAC at ¶ 6. The Enterprise Exclusion does not preclude TMPC's duty to defend.

This conclusion is further compelled by Texas law governing the interpretation of insurance policies. TMPC's interpretation of the exclusion impermissibly reads out the language in the exclusion limiting its application to situations in which an insured is sued in an entrepreneurial or managerial capacity for another entity. Accordingly, it must be rejected. *See, e.g., Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 465 (Tex. 1998) (preferred interpretation of an insurance policy does not read out any terms of the contract); *Nassar v. Liberty Mut. Ins. Co.*, 508 S.W.3d 254, 258 (Tex. 2017) ("Courts must 'examine the entire agreement and seek to harmonize and give effect to all provisions so that none will be rendered meaningless.").

Finally, the Enterprise Exclusion is inapplicable even if the Plaintiffs alleged that Dr. Shah acted in one or more of the identified capacities for one or more of the identified enterprises (and they do not). This is because the exclusion does not apply if "the liability arises from the Insured's provision of treatment to a patient." Dr. Shah's alleged liability falls squarely within the exclusion's exception. His alleged liability arises from his treatment of one or more patients, Plaintiffs Hubbard and/or Goedinghaus. SAC at ¶¶ 15 -16, 127-139, 338-340.

## The Punitive Damages Exclusion Does not Preclude a Defense.

TMPC's reliance on the punitive damages exclusion as barring its duty to defend must also be rejected. The duty to defend is distinct from, and broader than, the duty to indemnify. *Zurich*, 268 S.W.3d at 490. The duty to defend is not negated by the inclusion of claims that are not covered; rather it is triggered by the inclusion of claims that might be covered. *Id.* at 491.

The punitive damages exclusion only precludes coverage for punitive, not actual or compensatory, damages. Plaintiffs' claims are not limited to claims for punitive damages. Plaintiffs also seek compensatory damages. SAC at ¶¶ 399, 403, 413, 421 and Prayer Paragraph at sections (a) and (b) (requesting an award of compensatory damages). The punitive damages exclusion is inapplicable to those alleged damages. It thus does not preclude TMPC's obligation to defend. *See, e.g., Admiral Ins. Co v. Rio Grande Heart Specialists of S. Texas, Inc.*, 64 S.W.3d 497, 503 (Tex. App. – Corpus Christi 2002, pet. dism'd) (insurer obligated to defend lawsuit seeking punitive damages even though the policy excluded such damages from the definitions of damages covered by the policy since the claimants also sought actual damages); *Acceptance Indem. Ins. Co. v. Maltez*, 2005 WL 8162311, at *5 (S.D. Tex. 2005) (fact that the insurance policy excluded coverage for

The Medical Protective Company                                        **WICK PHILLIPS**
October 21, 2024
Page 7 of 8

punitive damages was not relevant for purposes of determining the insurer's duty to defend but was more appropriately determined in connection with the insurer's duty to indemnify).

**TMPC's Refusal to Defend is In Breach of the Policy and its Obligations Under the Texas Insurance Code**.

As demonstrated above, TMPC's refusal to defend Dr. Shah is wrongful. TMPC is in breach of its contractual obligations to Dr. Shah. Dr. Shah's demand for a defense is also a first party claim to which the Texas Prompt Payment of Claims statute applies. See Tex. Ins. Code § 542.051(2), 541.060. TMPC's wrongful repudiation of any obligation to pay Dr. Shah's defense costs violates the Prompt Payment of Claims statute, rendering TMPC liable to Dr. Shah for (a) his unpaid defense costs to date of $11,393.64,[5] (b) 18% per annum interest on those costs, and (c) his attorneys' fees and expenses incurred in connection with prosecuting his claims against TMPC. Tex. Ins. Code § 542.060(a).

TMPC's wrongful denial of a defense also violates the Texas Unfair Claims Settlement Practices statute. Specifically, TMPC, in unjustifiably denying a defense to Dr. Shah, has (a) failed to attempt in good faith to effectuate a prompt, fair and equitable settlement of a claim with respect to which its liability has become reasonably clear, (b) failed to promptly provide Dr. Shah a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for its denial of a defense, and (c) refused to pay Dr. Shah's claim for a defense without conducting a reasonable investigation of the claim. TMPC's violations of the Texas Unfair Claims Settlement Practices statute render it liable to Dr. Shah for his actual damages, his reasonable and necessary attorney's fees and court costs, and, upon a finding that TMPC's conduct was committed "knowingly," treble damages. Tex. Ins. Code § 542.152.

On behalf of Dr, Shah, demand is hereby made that TMPC (a) withdraw its denial of coverage, (b) provide Dr. Shah a defense, (c) reimburse Dr. Shah the sum of $11,393.64 representing the attorneys' fees and expenses he has incurred to date in defending the Hubbard Lawsuit, and (d) reimburse Dr. Shah for his reasonable and necessary attorneys' fees and expenses of $5,000.00 incurred to date in pursuing his claim for coverage following TMPC's wrongful refusal to defend and its violations of the Texas Insurance Code. Please accept this letter as requisite notice under Section 38.001(8) (breach of contract) of the Texas Civil Practice and Remedies Code and Chapters 541 and 542 of the Texas Insurance Code.

If TMPC refuses to reconsider its coverage position and we have not received payment of the sums demanded herein within thirty (30) days of the date of this letter, we will have no choice but to proceed with litigation. In this event, Dr. Shah will seek all appropriate remedies and amounts recoverable under Chapters 541 and/or 542 of the Texas Insurance Code and Texas law, including, but not limited to, actual damages, applicable interest, treble damages and attorneys' fees and expenses.

---

[5] Dr. Shah's damages in the form of defense costs incurred in the Hubbard Lawsuit will increase as additional defense costs are incurred.

The Medical Protective Company                                    **WICK PHILLIPS**
October 21, 2024
Page 8 of 8


We hope to resolve this matter informally with TMPC and look forward to its prompt response to this demand.


                                        Sincerely,


                                        Charles C. Keeble, Jr.