**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

**THE MEDICAL PROTECTIVE COM-**
**PANY,**

     *Plaintiff*,

                                     **Case No. 5:24-CV-01315-JKP**

**v.**

**MRUGESHKUMAR SHAH,**

     *Defendant*.

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff The Medical Protective Company's ("MedPro") Motion for Summary Judgment, (*ECF No. 23*), and Defendant Mrugeshkumar Shah's ("Shah") Cross-Motion for Summary Judgment, (*ECF No. 25*). All parties filed responsive briefings. *See ECF Nos. 25, 26, 27, 29*. Upon due consideration, MedPro's Motion for Summary Judgment, (*ECF No. 23*), is denied as to the duty to defend and is denied without prejudice to refiling as to the duty to indemnify. Shah's Cross-Motion for Summary Judgment, (*ECF No. 25*), is granted as to the duty to defend and is denied without prejudice to refiling as to his cause of action for breach of contract. As a result, the Court finds MedPro has a duty to defend Shah in Cause No. 5:23-CV-00580.

## BACKGROUND

The instant case arises out of an insurance dispute between the two parties. Plaintiff MedPro filed this action against Defendant Shah alleging, among other things, Shah breached the claims-made professional liability policy (the "Policy") issued by MedPro to Shah and that MedPro has no duty to defend or indemnify Shah in an underlying suit, Cause No. 5:23-CV-

00580, (the "Underlying Lawsuit"). *See, generally, ECF No. 1*.

## I.    The Underlying Lawsuit

On November 1, 2022, the underlying Plaintiffs, Kayla Goedinghaus and Julia Hubbard, filed the Underlying Lawsuit. Cause No. 5:23-CV-00580, (*ECF No. 1*). At this stage, the operative pleading is Goedinghaus and Hubbard's Second Amended Complaint in the Underlying Lawsuit. *Id.*, (*ECF No. 292*). In sum, Goedinghaus and Hubbard allege Shah and others "ran a sex and labor trafficking venture . . . for financial gain." *Id.*, (*ECF No. 292 at 2*).

In the underlying Second Amended Complaint, Goedinghaus and Hubbard use the words "Venture" and "Enterprise" interchangeably. *See* Cause No. 5:23-CV-00580, (*See ECF No. 292*). Goedinghaus and Hubbard describe a "sex and labor trafficking venture (the "Venture")" that, because "the misconduct and crimes of the Defendants were so egregious[,] . . . became an illegal racketeering enterprise (the "Enterprise")." *Id. at 2–3*.

As part of the Venture/Enterprise, Goedinghaus and Hubbard allege that the underlying "Defendants conspired together to commit various unlawful predicate acts, including coercion, human trafficking, dealing in controlled substances, and wire fraud." *Id. at 3*. Regarding Shah, Goedinghaus and Hubbard allege "Shah is liable to both Plaintiffs under [the Trafficking Victims Protection Act] beneficiary liability." *See* Cause No. 5:23-CV-00580, (*ECF No. 292 at 57–58*). Goedinghaus and Hubbard allege Shah "provided assistance, support and facilitation to the Venture, including by prescribing controlled substances to Plaintiff Hubbard that allowed the Venture to force Hubbard to perform commercial sex acts against her will." *Id. at 58*.

The following allegations from the underlying Second Amended Complaint provide added context regarding Shah's alleged role as part of the Venture/Enterprise:

2

7. Key to [Richard Hubbard's (the former spouse of Plaintiff Hubbard and former fiancé of Plaintiff Goedinghaus)] control of Hubbard and Goedinghaus . . . was the work of psychologist Dr. Benjamin Todd Eller ("Eller").

. . .

14. As a psychologist, Eller was unable to write prescriptions on his own. However, [Richard Hubbard] found medical doctors who were willing to write prescriptions based on Eller's written recommendations. These physicians included Dr. Melissa Miller ("Miller"), Dr. Scott Woods ("Woods"), and Dr. Mrugeshkumar Shah ("Shah") (the "Medical Doctor Defendants"), as well as Dr. Joseph Bolin.

15. It is not as if these doctors did not speak to the Plaintiffs; they did—but they ignored Plaintiffs' pleas for assistance, and, in the cases of Defendants Woods and Shah, ignored Hubbard's visible bruising, frequent injuries, and frequent surgeries that indicated physical abuse. Each of the Medical Doctor Defendants were informed by either Hubbard, Goedinghaus, or both that the drugs the Medical Doctor Defendants were prescribing were being used for an improper purpose, that Hubbard and Goedinghaus were being abused by Rick, and that Hubbard and Goedinghaus needed help.

16. None of the Medical Doctor Defendants took any action in response to these reports, and instead simply prescribed the drugs that Eller requested in return for payment from Rick.

*Id.* at 4–5.

## II. The Instant Case

On November 15, 2024, MedPro filed the instant case—a declaratory judgment action—against Shah alleging, among other things, "[t]he claims asserted against [Shah] in the [U]nderlying [L]awsuit are not within the Policy's scope of coverage." *ECF No. 1 at 16*. MedPro requests that the Court enter a declaratory judgment "regarding the rights, status, and other legal relations of the parties to the Policy" *Id. at 17*.

On March 14, 2025, Shah filed his Answer to MedPro's Complaint and Counterclaims. *ECF No. 7*. His Counterclaims consist of causes of action for (1) breach of contract; (2) prompt payment of claims; and (3) unfair claims settlement practices. *Id.*

3

Now, MedPro moves for summary judgment on its declaratory judgment action,[1] in which it requests a judgment declaring it has no duty to defend of indemnify Shah in connection with the claims asserted against him in the Underlying Lawsuit. *ECF No. 23*. Shah in turn moves for partial summary judgment on MedPro's claim for declaratory relief, insisting MedPro is obligated to defend Shah in the Underlying Lawsuit. *ECF No. 25*.

## LEGAL STANDARD

Summary judgment is appropriate if the record shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Rodriguez v. Pacificare, Inc.*, 980 F.2d 1014, 1019 (5th Cir. 1993). "A fact is material only if its resolution would affect the outcome of the action." *Wiley v. State Farm Fire & Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009). A genuine dispute for trial exists if the record taken as a whole could lead a reasonable trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010). Because there must be a genuine dispute of material fact, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

The moving party bears the initial burden of informing the court of the basis for the motion and of identifying those portions of the record which demonstrate the absence of a genuine dispute of material fact or the appropriateness of judgment as a matter of law. *Celotex,* 477 U.S. at 323. The movant is not required to negate the elements of the nonmovant's case but may satisfy its summary judgment burden by demonstrating the absence of facts supporting specific

---

[1] The Court notes, in the instant case's Complaint, MedPro alleges Shah "breached the Policy." *E.g.*, *ECF No. 1 at 2*. MedPro does not address any breach on Shah's part in its Motion for Summary Judgment. *See ECF No. 23*.

4

elements of the nonmovant's cause(s) of action. *Little v. Liquid Air Corp.*, 37 F. 3d 1069, 1075, 1076 n. 16 (5th Cir. 1994). To satisfy this burden, the moving party must provide affidavits or identify any portion of the pleadings, discovery or admissions that demonstrate the absence of a triable dispute of material fact. *Celotex*, 477 U.S. at 323; *Rodriguez*, 980 F.2d at 1019. "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., LLC v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014).

If the movant carries its initial burden, the burden shifts to the nonmovant to present competent summary judgment evidence showing the existence of a genuine dispute of material fact. *Matsushita*, 475 U.S. at 586–87. Upon the shifting burden, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston, Tex.*, 337 F.3d 539, 541 (5th Cir. 2003). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which this evidence raises a genuine dispute of material fact. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). Further, should the non-moving party fail "to address or respond to a fact raised by the moving party and supported by evidence, then the court may consider the fact as undisputed" and "[s]uch undisputed facts may form the basis for a summary judgment." *Broadcast Music*, *Inc. v. Bentley*, 5:16-CV-00394, 2017 WL 782932 at *2 (W.D. Tex. Feb. 28, 2017).

In determining the merits of a motion for summary judgment, a court has no duty to search the record for material fact issues or to find a party's ill-cited evidence. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012); *Ragas*, 136 F.3d at 458. In addition, a court may not make credibility determinations or weigh the evidence and must view all evidence

and draw all reasonable inferences in the light most favorable to the party opposing the motion. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000); *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (citations omitted).

Additionally, in reviewing "cross-motions for summary judgment, [the court] examine[s] 'each party's motion independently' and view[s] 'the evidence and inferences in the light most favorable to the nonmoving party.'" *Springboards To Educ., Inc. v. Hous. Indep. Sch. Dist.*, 912 F.3d 805, 811 (5th Cir. 2019) (quoting *JP Morgan Chase Bank, N.A. v. DataTreasury Corp.*, 823 F.3d 1006, 1011 (5th Cir. 2016)); *see also Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 538–39 (5th Cir. 2004). "Cross-motions for summary judgment will not, in and of themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *Joplin v. Bias*, 631 F.2d 1235, 1237 (5th Cir. 1980). The rationale for this rule is that "each party moving for summary judgment may do so on different legal theories depending on different constellations of material facts." *Bricklayers, Masons & Plasterers Int'l Union of Am., Loc. Union No. 15, Orlando, Fla. v. Stuart Plastering Co.*, 512 F.2d 1017, 1023 (5th Cir. 1975).

Nonetheless, "cross-motions for summary judgment may be probative of the non-existence of a factual dispute when [] they demonstrate a basic agreement concerning what legal theories and material facts are dispositive." *Petro Harvester Operating Co. v. Keith*, 954 F.3d 686, 700 (5th Cir. 2020) (quoting *Bricklayers*, 512 F.2d at 1023).

## ANALYSIS

The dispute between the parties centers primarily on the meaning of key provisions in the Policy that delineate the contours of Shah's coverage. *See ECF No. 23-1 at 2–46; ECF No. 25-1*

6

*at 4–48*. In particular, the parties offer differing opinions as to whether the underlying claims fall under the definition of "professional services" included in the Policy. *Id.*

The Court will first address the rules governing review of insurance policies and then examine whether the Policy gives rise to either a duty to defend or a duty to indemnify.

## I.   The Duty to Defend

In Texas, "the duty to defend is distinct from, and broader than, the duty to indemnify." *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 490 (Tex. 2008) (internal citation omitted). An insurer's duty to defend is triggered if the factual allegations in the plaintiff's complaint potentially support a covered claim, while the duty to indemnify is based on whether the alleged facts are actually established. *Id.*; *see also Utica Nat'l Ins. Co. v. Am. Indem. Co.*, 141 S.W.3d 198, 201 (Tex. 2004) ("A liability insurer is obligated to defend a suit if the facts alleged in the pleadings would give rise to any claim within the coverage of the policy.").

To determine whether the insurer bears a duty to defend, Texas courts apply the eight-corners rule, which considers the third-party pleadings[2] in light of the policy provisions, without regard to the truth or falsity of the allegations. *GuideOne Elite Ins. Co. v. Fielder Road Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006). Consequently, facts beyond either the pleadings or the insurance policy are generally irrelevant to the court's determination of whether the insurer has a duty to defend. *Nat'l Union Fire Ins. Co. v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997).

Applying the eight-corners rule, courts construe the pleadings liberally and resolve all doubts regarding the duty in favor of coverage. *Zurich Am. Ins.*, 268 S.W.3d at 491; *see also Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 133 (Tex. 2010)

---

[2] The relevant third-party pleading is the Second Amended Complaint filed by underlying plaintiffs Goedinghaus and Hubbard. Cause No. 5:23-CV-00580, (*ECF No. 292*).

("Terms in insurance policies that are subject to more than one reasonable construction are interpreted in favor of coverage."). Furthermore, it is the factual allegations, rather than the theories alleged, that determine whether the insurer has a duty to defend. *Zurich Am. Ins.*, 268 S.W.3d at 495. Nevertheless, it is the insured, and not the insurer, that bears the burden of proving that the claims fall within the coverage provisions of the policy. *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 781–82 (Tex. 2008).

Under Texas law, insurance policies are subject to the general rules of interpretation and construction applicable to contracts. *Progressive County Mut. Ins. Co. v. Sink*, 107 S.W.3d 547, 551 (Tex. 2003). "In construing the terms of a contract, the court's primary purpose is always to ascertain the true intent of the parties as expressed in the written instrument." *Gregg & Valby, L.L.P. v. Great Am. Ins. Co.*, 316 F.Supp.2d 505, 508 (S.D. Tex. 2004) (citing *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995)). Whether an ambiguity exists in the language of an insurance contract is a question of law for the court to determine. *Kelley–Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998). Therefore, if the contract can be given "a definite or certain legal meaning," then it is unambiguous and may be enforced as written. *Nat'l Union Fire*, 907 S.W.2d at 520. The court will not find a contract ambiguous merely because the parties advance conflicting interpretations. *Kelley–Coppedge, Inc.*, 980 S.W.2d at 465.

### A.    Scope of Coverage

First, MedPro asserts it "is entitled to judgment as a matter of law because [] Shah has failed to satisfy his burden of proving a claim within the scope of Policy coverage." *ECF No. 23 at 9*. MedPro argues Goedinghaus does not allege to have ever been treated by or seen by Shah,[3] and that none of Goedinghaus and Hubbard's claims are based on "professional services"—as

---

[3] MedPro does not challenge Hubbard's status as a patient of Shah. *See ECF No. 23 at 9*.

defined in the Policy. *Id. at 9–10*. Shah counters that, in the underlying Second Amended Complaint, a provider-patient relationship between Shah and Goedinghaus can be inferred, and the "professional services" requirement is satisfied. *ECF No. 25 at 2*.

### 1.    The Policy

The Policy in the instant case covers claims for damages based on "professional services rendered, or which should have been rendered." *ECF No. 1-1 at 4*. Specifically, the Policy provides, in relevant part:

> In consideration of the payment of the premium . . . and subject to the limits of liability and the other terms of this policy, the Company hereby agrees to DEFEND and PAY DAMAGES, in the name and on behalf of the Insured or his estate,
>
> A. In any claim for damages, filed during the term of this policy, based on professional services rendered or which should have been rendered after the retroactive date by the Insured or any other person for whose acts or omissions the insured is legally responsible, in the practice of the Insured's profession as hereinafter limited and defined.

*Id*. The Policy defines "professional services" in relevant part, as follows:

> 5. The phrase "professional services" shall only include the following:
>
> (a) the rendering of medical, surgical, dental, or nursing services to a patient and the provision of medical examinations, opinions, or consultations regarding a person's medical condition with the Insured's practice as a licensed health care provider. This shall include first aid rendered at the scene of an accident without expectation of monetary compensation.

*Id. at 19*. The Policy defines "claim" as "an express written demand for money as compensation for civil damages." *Id. at 19*. The Policy also contains the following exclusion:

> EXCEPT THIS POLICY DOES NOT COVER
>
> * * *
>
> 2. Payment of damages (BUT WILL DEFEND) in any claim for damages if said damages are in consequence of the performance of a criminal act or willful tort or sexual act.

*Id. at 4* ("Exclusion No. 2").

### 2.    The Complaint in the Underlying Lawsuit

As stated above, Goedinghaus and Hubbard allege "Shah is liable to both Plaintiffs under [the Trafficking Victims Protection Act] beneficiary liability." *See* Cause No. 5:23-CV-00580, (*ECF No. 292 at 57*). Goedinghaus and Hubbard allege Shah "provided assistance, support and facilitation to the Venture, including by prescribing controlled substances to Plaintiff Hubbard that allowed the Venture to force Hubbard to perform commercial sex acts against her will." *Id. at 58*.

The following allegations from the underlying Second Amended Complaint provide added context regarding Shah's alleged role as part of the Venture/Enterprise:

7.    Key to [Richard Hubbard's (the former spouse of Plaintiff Hubbard and former fiancé of Plaintiff Goedinghaus)] control of Hubbard and Goedinghaus . . . was the work of psychologist Dr. Benjamin Todd Eller ("Eller").

      . . .

14.   As a psychologist, Eller was unable to write prescriptions on his own. However, [Richard Hubbard] found medical doctors who were willing to write prescriptions based on Eller's written recommendations. These physicians included Dr. Melissa Miller ("Miller"), Dr. Scott Woods ("Woods"), and Dr. Mrugeshkumar Shah ("Shah") (the "Medical Doctor Defendants"), as well as Dr. Joseph Bolin.

15.   It is not as if these doctors did not speak to the Plaintiffs; they did—but they ignored Plaintiffs' pleas for assistance, and, in the cases of Defendants Woods and Shah, ignored Hubbard's visible bruising, frequent injuries, and frequent surgeries that indicated physical abuse. Each of the Medical Doctor Defendants were informed by either Hubbard, Goedinghaus, or both that the drugs the Medical Doctor Defendants were prescribing were being used for an improper purpose, that Hubbard and Goedinghaus were being abused by Rick, and that Hubbard and Goedinghaus needed help.

16.   None of the Medical Doctor Defendants took any action in response to these reports, and instead simply prescribed the drugs that Eller requested in return for payment from Rick.

10

*Id. at* 4–5.

### 3.    Discussion

Having set forth the pertinent terms of the Policy and the relevant allegations made by Goedinghaus and Hubbard in the Underlying Lawsuit, the Court now addresses whether the allegations fall within the coverage provisions of the Policy. As the insured, Shah "has the burden of establishing coverage under the terms of the policy." *Gilbert Texas Constr., L.P.,* 327 S.W.3d at 124.

### a.    Provider-Patient Relationship

While Goedinghaus and Hubbard, in the underlying Second Amended Complaint, do not refer to themselves as "patients," the Court agrees with Shah a provider-patient relationship between Shah and Goedinghaus can be inferred. In this context,

> "If a petition does not allege facts within the scope of coverage, an insurer is not legally required to defend a suit against its insured." *Am. Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842, 848 (Tex. 1994). However, in the event of an ambiguity, courts "construe the pleadings liberally, resolving any doubt in favor of coverage." *Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 643 (Tex. 2005). At the same time, courts "may not read facts into the pleadings, look outside the pleadings, or speculate as to factual scenarios that might trigger coverage or create an ambiguity." *Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 596 (5th Cir. 2011). And, while "[t]he factual allegations are considered without regard to their truth or falsity," *Ewing Const. Co. v. Amerisure Ins. Co.*, 420 S.W.3d 30, 33 (Tex. 2014), courts "only defer to a complaint's characterization of factual allegations, not legal theories or conclusions," *Evanston Ins. Co. v. Legacy of Life, Inc.*, 370 S.W.3d 377, 380 (Tex. 2012).
>
> "Where the complaint does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy." *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008) (quoting *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Tex. 1965)). "The duty to defend is not affected by facts ascertained before suit, developed in the process of litigation, or by the ultimate outcome of the suit." *Am. All. Ins. Co. v. Frito-Lay, Inc.*, 788 S.W.2d 152, 154 (Tex. App.— Dallas 1990, writ dism'd w.o.j.). "If a complaint potentially includes a covered claim, the insurer must defend the entire suit." *Nokia*, 268 S.W.3d at 491.

*Bitco Gen. Ins. Corp. v. Monroe Guar. Ins. Co.*, No. 5:18-CV-00325, 2019 WL 3459248, at *3 (W.D. Tex. July 31, 2019), *R. & R. adopted,* No. 5:18-CV-00325, 2019 WL 11838850 (W.D. Tex. Sept. 27, 2019), *aff'd*, 31 F.4th 325 (5th Cir. 2022).

Here, while Goedinghaus does not refer to herself explicitly as a "patient"[4] of Shah, the Court finds Shah carries his burden of demonstrating the underlying Second Amended Complaint contains facts sufficient to conclude she was, at least potentially. *See Nokia*, 268 S.W.3d at 491. For example, the underlying Second Amended Complaint alleges "[e]ach of the Medical Doctor Defendants," including Shah, spoke with Plaintiffs and "were informed by either Hubbard, Goedinghaus, or both that the drugs the Medical Doctor Defendants were prescribing were being used for an improper purpose" . . . [and] "the Medical Doctor Defendants did not intervene or offer support in any [] way, like offering subsidized healthcare, as is typical for ***patients*** in Plaintiffs' financial positions." *See* Cause No. 5:23-CV-00580, (*ECF No. 292 at 4–5, 23*) (emphasis added). Challenging these facts, MedPro directs the Court to Shah's motion to dismiss filed in the Underlying Lawsuit; but—because it is not a pleading—the Court will not consider it for these purposes. Fed. R. Civ. P. 7. Therefore, the Court determines in this respect the allegations in the underlying Second Amended Complaint could potentially come within the coverage of the Policy. *See Nokia*, 268 S.W.3d at 491. *See Nokia*, 268 S.W.3d at 491.

### b.   Professional Services

The Court further agrees with Shah that Shah's alleged professional services form the basis or foundation of the claims against him. In this context—interpreting the meaning of "professional services" in a MedPro policy—a fellow district Court found:

---

[4] The Policy itself does not define the term "patient," despite defining other terms. *See ECF No. 1-1 at 2–46*. The Court notes Black's Law Dictionary defines "patient" as "[a] person under medical or psychiatric care." PATIENT, Black's Law Dictionary (12th ed. 2024).

> The prescribing of medications, diagnosing of disorders, [and the referring of patients to] specialized practitioners . . . are professional services within the meaning of the Policy. Consequently, unless they are excepted by other Policy provisions, [a patient's] claims that are based on such conduct are covered by the Policy.

*See* Cause No. 3:95-CV-00335, (*ECF No. 24 at 9–10*); *see also Swicegood ex rel. Swicegood v. Med. Protective Co.*, No. 3:95-CV-00335, 2003 WL 22234928, *5 (N.D. Tex. Sept. 19, 2003) (referencing *id.*).

Here, the Court finds Shah carries his burden of demonstrating the underlying Second Amended Complaint contains facts sufficient to conclude Shah's alleged professional services form the basis or foundation of the claims against him, at least potentially. *See Nokia*, 268 S.W.3d at 491. For example, the underlying Second Amended Complaint alleges "Shah provided assistance, support and facilitation to the Venture, including by ***prescribing controlled substances*** to [] Hubbard . . . Shah received things of value from the Venture, including payment from Rick Hubbard on behalf of the Venture for Hubbard's ***visits*** to Shah." *See* Cause No. 5:23-CV-00580, (*ECF No. 292 at 57–58*) (emphasis added). Challenging these facts, MedPro takes the position that somehow a physician prescribing medication does not equate to "the rendering of medical . . . services" (and therefore does not fall within the coverage provisions of the Policy). *See ECF No. 1-1 at 19; ECF No.23 at 9–10*. This position goes against reason. Therefore, the Court determines in this respect the allegations in the underlying Second Amended Complaint could potentially come within the coverage of the Policy. *See Nokia*, 268 S.W.3d at 491.

## B.    Business Enterprise Exclusion

Second, MedPro asserts "[e]ven if [] Shah could establish a claim within the scope of coverage, any such claim would be excluded by the Policy's Business Enterprise Exclusion." *ECF No. 23 at 10*. MedPro argues Shah's alleged participation in a "sex and labor trafficking"

13

Venture, described in the underlying Second Amended Complaint, constitutes conduct related to a business enterprise and therefore the exclusion applies. *Id. at 10–14*. Shah counters that MedPro cannot meet its burden of establishing the applicability of the exclusion. *ECF No. 25 at 15*.

### 1.    The Policy

The Policy provides, in relevant part:

The following exclusion is hereby added:

> Any liability arising from activity of an Insured, or an employee of the Insured, as a proprietor, shareholder, officer, administrator, committee member, director, or medical director of any hospital, sanitarium, clinic, nursing home, surgicenter, blood bank, commercial laboratory, health maintenance organization, preferred provider organization, or other professional or business enterprise, unless the liability arises from the Insured's provision of treatment to a patient.

*ECF No. 1-1 at 23*.

### 2.    The Complaint in the Underlying Lawsuit

As stated above, in the underlying Second Amended Complaint, Goedinghaus and Hubbard use the words "Venture" and "Enterprise" interchangeably. *See* Cause No. 5:23-CV-00580, (*See ECF No. 292*). Goedinghaus and Hubbard describe a "sex and labor trafficking venture (the "Venture")" that, because "the misconduct and crimes of the Defendants were so egregious[,] . . . became an illegal racketeering enterprise (the "Enterprise"). *Id. at 2–3*.

As part of the Venture/Enterprise, "Defendants conspired together to commit various unlawful predicate acts, including coercion, human trafficking, dealing in controlled substances, and wire fraud." *Id. at 3*. Regarding Shah, Goedinghaus and Hubbard allege "Shah is liable to both Plaintiffs under [the Trafficking Victims Protection Act] beneficiary liability." *See* Cause No. 5:23-CV-00580, (*ECF No. 292 at 57–58*). Goedinghaus and Hubbard allege Shah "provided

14

assistance, support and facilitation to the Venture, including by prescribing controlled substances to Plaintiff Hubbard that allowed the Venture to force Hubbard to perform commercial sex acts against her will." *Id. at 58*.

### 3. Discussion

Having set forth the pertinent terms of the Policy and the relevant allegations made by Goedinghaus and Hubbard in the Underlying Lawsuit, the court now addresses whether MedPro's duty to defend is barred by the Policy's Business Enterprise Exclusion.

The Fifth Circuit has explained that "when the plaintiff's petition makes allegations which, if proved, would place the plaintiff's claim within an exclusion from coverage, there is no duty to defend." *Gulf States Ins. Co. v. Alamo Carriage Serv.*, 22 F.3d 88, 90 (5th Cir. 1994) (citing *Fid. & Guar. Ins. Underwriters, Inc. v. McManus*, 633 S.W.2d 787, 788 (Tex. 1982)). "Although the insured bears the initial burden to prove its claim falls within the scope of coverage afforded by the policy, the insurer bears the burden to prove an exclusion precludes coverage." *Lone Star Heat Treating Co. v. Liberty Mut. Fire Ins. Co.*, 233 S.W.3d 524, 526 (Tex. App.—Houston [14th Dist.] 2007, no pet.). "Exclusions are narrowly construed, and all reasonable inferences must be drawn in the insured's favor."[5] Therefore, the Court "must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not itself unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent." *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 99 F.3d 695, 701 (5th Cir. 1996) (quoting *Barnett v. Aetna Life Ins.* Co., 723 S.W.2d 663, 666 (Tex. 1987)).

---

[5] *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 370 (5th Cir. 2008) (citing *Gen. Star Indem. Co. v. Gulf Coast Marine Assocs., Inc.*, 252 S.W.3d 450, 458–59 (Tex. App.—Houston [14th Dist.] 2008, pet. denied)); *see also Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991) (stating the well-established rule that "if a contract of insurance is susceptible of more than one reasonable interpretation," the court "must resolve the uncertainty by adopting the construction that most favors the insured").

Here, MedPro fails to offer a reasonable interpretation of the Business Enterprise Exclusion for the Court to adopt. *See ECF Nos. 23, 27*). For example, the Business Enterprise Exclusion precludes: "[a]ny liability arising from activity of an Insured . . . as a proprietor, shareholder, officer, administrator, committee member, director, or medical director of any hospital, sanitarium, clinic, nursing home, surgicenter, blood bank, commercial laboratory, health maintenance organization, preferred provider organization, or other professional or business enterprise . . . " *ECF No. 1-1 at 23*. Even if the Court determined that the Venture/Enterprise described by Goedinghaus and Hubbard in the underlying Second Amended Complaint qualified as a "business enterprise" for purposes of the Policy, there are no allegations Shah participated "as a proprietor, shareholder, officer, administrator, committee member, director, or medical director." *See* Cause No. 5:23-CV-00580, (*See ECF No. 292*). Shah made this a point in his Response to MedPro's Motion for Summary Judgment and his Cross-Motion for Summary Judgment. *ECF Nos. 25*. In responding, however, MedPro fails to address this. *ECF Nos. 26, 27*. Therefore, MedPro fails to carry its burden of demonstrating the Business Enterprise Exception precludes coverage. As a result, the Court finds MedPro has a duty to defend Shah in Cause No. 5:23-CV-00580.

Accordingly, MedPro's Motion for Summary Judgment, (*ECF No. 23*), is denied as to the duty to defend and Shah's Cross-Motion for Summary Judgment, (*ECF No. 25*), is granted as to the duty to defend.

## II.    The Duty to Indemnify

However, the Court will defer the question of whether MedPro has a duty to indemnify Shah in the Underlying Lawsuit, 5:23-CV-00580, until that case is resolved. [6]

---

[6] *E.g., LM Ins. Corp. v. Nautilus Ins. Co.*, 723 F. Supp. 3d 519, 529 (S.D. Tex. 2024).

The duty to indemnify "arises after an insured has been adjudicated, whether by judgment or settlement, to be legally responsible for damages in a lawsuit." *Collier v. Allstate County Mutual Insurance Co.*, 64 S.W.3d 54, 62 (Tex. App.—Fort Worth 2001, no pet.); *see also Reser v. State Farm Fire & Casualty Co.*, 981 S.W.2d 260, 263 (Tex. App.—San Antonio 1998, no pet.). Unlike the duty to defend, which is based on allegations, an insurer's duty to indemnify is based on "the actual facts that underlie the cause of action and result in liability." *Northfield Insurance Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528–29 (5th Cir. 2004) (quotation marks omitted). "[I]t may be necessary to defer resolution of indemnity issues until after the underlying third-party litigation is resolved because coverage may turn on facts actually proven in the underlying lawsuit." *D.R. Horton-Texas, Ltd. v. Markel International Insurance Co., Ltd.*, 300 S.W.3d 740, 745 (Tex. 2009).

At this juncture, the Court does not see any compelling reason to render a decision regarding MedPro's duty to indemnify Shah while the Underlying Lawsuit is ongoing. The Court also will not render a decision regarding MedPro's possible duty to indemnify Shah because neither party adequately addresses the issue in their briefings. *See ECF Nos. 23, 25, 26, 27, 29*. Therefore, the instant case will remain stayed and administratively closed until the Underlying Lawsuit, 5:23-CV-00580, is resolved.

Accordingly, MedPro's Motion for Summary Judgment, (*ECF No. 23*), is denied without prejudice to refiling as to the duty to indemnify.

### III.    Breach of Contract

In Shah's Cross-Motion for Summary Judgment, (*ECF No. 25*), he mentions in passing that the Court should "enter a partial summary judgment that [MedPro] is liable on his Counterclaim for breach of contract based on its wrongful refusal to defend [the Underlying Lawsuit]."

*ECF No. 25 at 1*. Shah does not meaningfully address his breach of contract cause of action beyond the above-mentioned statement in his Cross-Motion.

Accordingly, Shah's Cross-Motion for Summary Judgment, (*ECF No. 25*) is denied without prejudice to refiling as to his cause of action for breach of contract.

### CONCLUSION

For the reasons stated above, MedPro's Motion for Summary Judgment, (*ECF No. 23*), is **DENIED** as to the duty to defend and is **DENIED WITHOUT PREJUDICE TO REFILING** as to the duty to indemnify. Shah's Cross-Motion for Summary Judgment, (*ECF No. 25*), is **GRANTED** as to the duty to defend and is **DENIED WITHOUT PREJUDICE TO REFILING** as to his cause of action for breach of contract. As a result, the Court finds MedPro has a duty to defend Shah in Cause No. 5:23-CV-00580.

For the time being, given the uncertainty by this Court as to the timeline under which the Underlying Lawsuit, 5:23-CV-00580, will proceed, **IT IS ORDERED** this case will remain **STAYED** and **ADMINISTRATIVELY CLOSED**. The Court notes there are several causes of action remaining in this litigation to be determined at a later date, which include MedPro's request for declaratory relief on the duty to indemnify and Shah's causes of action for (1) breach of contract; (2) prompt payment of claims; and (3) unfair claims settlement practices. Upon entry of a final judgment in the Underlying Lawsuit, the parties may reurge their motions on the duty to indemnify and Shah's causes of action.

Therefore **IT IS FURTHER ORDERED** the parties shall file an advisory **within seven (7) days of entry of a final judgment in the Underlying Lawsuit** to notify the Court of the final judgment, advise the Court of the status of any settlement negotiations, and advise the Court of the parties' positions on the issues remaining to be resolved in this matter.

It is so ORDERED.
SIGNED this 23rd day of January, 2026.

_____
JASON  PULLIAM
UNITED STATES DISTRICT JUDGE